**Ex parte Robert DURST.**

Nos. 14–03–01421–CR, 14–03–01423–CR, 14–04–00194–CR.

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 24, 2004.

Michael Ramsey, Chip B. Lewis, and Dick DeGuerin, Houston, for appellants.

Joel H. Bennett, Galveston, for appellees.

Panel consists of Justices FOWLER, EDELMAN, and SEYMORE.

## MAJORITY OPINION ON MOTION FOR REHEARING

WANDA McKEE FOWLER, Justice.

### I. INTRODUCTION

This is a highly unusual bond appeal from orders denying Durst's applications for writs of habeas corpus. It involves the highest bail ever set in Texas for a single offense—$1 billion—as well as the highest amount for three offenses—$3 billion. It involves a defendant, Robert Durst, of apparently great, but undetermined, wealth. It also involves a condition imposed by the trial court requiring Durst, who fled an earlier court date on another charge, to pay for twenty-four-hour supervision by law enforcement.

In addition to that, this is not our first opinion in this case. Originally this Court remanded the case to the trial court because the bail set was grossly and outrageously excessive—unconstitutionally excessive. However, the majority of the panel did not set an amount for bail or state what a reasonable bail might be, other than to state that we had not found a decision in which bail had been set or approved at even one percent of the three amounts set in this case.

As one can imagine, this case defies comparison with any precedent. That is why Durst filed a motion for rehearing. Fearing that the trial court had no real guidance from this Court or the case law, Durst requested this Court issue a new opinion re-setting bail for each offense. Today, we do just that. A majority of the panel grants rehearing, orders the earlier opinion withdrawn, and sets bail for each offense at $150,000. Although this amount is a bit higher than the high end of the range of bail set for third-degree felonies, we find the amount justifiable under the very unusual circumstances of this very unusual case. We explain below.

### II. IN SETTING BAIL, ARTICLE 17.15 OF THE CODE OF CRIMINAL PROCEDURE DIRECTS U.S. TO CONSIDER CERTAIN FACTORS

In three issues, Durst challenges the bail amounts as violating the constitutional and statutory prohibitions against exces-

sive bail.[1] *See* U.S. Const. amend. VIII; Tex. Const. art. I, § 13; Tex.Code Crim. Proc. art. 1.09.

■ The right to release before trial is conditioned upon the accused's giving adequate assurance that he will stand for trial and submit to sentence if convicted. *Stack v. Boyle,* 342 U.S. 1, 4, 72 S.Ct. 1, 96 L.Ed. 3 (1951). Bail set at an amount higher than reasonably calculated to fulfill this purpose is excessive under the Eighth Amendment. *Id.*

■ The burden is on the person seeking the reduction to demonstrate that bail is excessive. *See Maldonado v. State,* 999 S.W.2d 91, 93 (Tex.App.-Houston [14th. Dist.] 1999, pet. ref'd). The amount of bail is a matter resting within the sound discretion of the trial court and there is no precise standard for reviewing its determination. *Ex parte Pemberton,* 577 S.W.2d 266, 267 (Tex.Crim.App.1979). However, article 17.15 of the Code of Criminal Procedure serves as a guide.

Article 17.15 provides that bail shall be set, in the exercise of discretion, and according to the following rules:

1. The bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with.

2. The power to require bail is not to be so used as to make it an instrument of oppression.

3. The nature of the offense and the circumstances under which it was committed are to be considered.

4. The ability to make bail is to be regarded, and proof may be taken upon this point.

5. The future safety of a victim of the alleged offense and the community shall be considered.

Tex.Code Crim. Proc. art. 17.15.

■ Other circumstances and factors to be considered in determining the amount of bail include family and community ties, length of residency, aggravating factors involved in the offense, the defendant's work history, prior criminal record, and previous and outstanding bail. *Ex parte Rubac,* 611 S.W.2d 848, 849 (Tex. Crim.App.1981). We will review each of the factors separately.

**A. Sufficient Bail to Assure Appearance**

We turn to the first factor, a sufficient bail to assure appearance. The evidence indicates that a bail of approximately $300,000 was not enough to keep Durst in Texas for his trial for murder.[2] Durst's home is New York City. Although Durst previously resided in Galveston for a time, he admits he has no real ties to Galveston County. Because Durst is independently wealthy, he is able to travel easily. He also is willing to disguise himself to evade authorities, having done so in the past. This history of jumping bail and fleeing the jurisdiction certainly supports a finding that he is an extreme flight risk. Indicating her concern about this at the hearing on bond, the trial judge discussed taped conversations of Durst that she heard before his murder trial. In those conversations, he talked about having money secreted in a non-extradition country. These factors support an extremely high bail.

**B. Not to be Used as an Instrument of Oppression**

---

**1.** Durst also raises a fourth issue, contending that there should be only one indictment charging bail jumping rather than two. However, we do not reach that issue because Durst did not sufficiently develop it in the trial court—presenting no evidence and little argument. It presents nothing for our review and is overruled.

**2.** A jury later acquitted Durst of murder.

The second factor requires courts to ensure that bail is not used as an instrument of oppression. This factor is one of the reasons we reversed the original bail. These amounts were so excessive, no one could meet them—not Durst, and not any of the bail bond companies. The bail seemed designed solely to prevent Durst from getting out of jail. This is an example of bail being used as an instrument of oppression. *See* TEX.CODE CRIM. PROC. art. 17.15(2).

Even though we are lowering the amount of bail, this record still supports a high bail. A bail set around one million dollars for all three offenses together would not be oppressive. Although the record is a little unclear as to the highest bail Durst could make, it appears that Durst could make a total bail of one million dollars. For his trial, he was able to post bail equaling approximately $300,000, apparently procuring the money in a day, and he was willing to forfeit that amount. His willingness to forfeit indicates access to more money.

### C. Nature of the Offense

The third factor under article 17.15 is the nature of the offense for which the defendant is charged. In connection with this, two of the primary factors considered are (1) the length of the sentence, and (2) the nature of the offense. *Ex parte Rubac*, 611 S.W.2d at 849; *Hughes v. State*, 843 S.W.2d 236 (Tex.App.-Houston [14th Dist.] 1992, no pet.). Durst is charged with two counts of felony bail jumping and failure to appear under section 38.10 of the Texas Penal Code and one count of tampering with evidence under section 37.09(d)(1) of the Code. Each offense is a third-degree felony punishable by imprisonment from two to ten years and a fine up to $10,000. TEX. PEN.CODE § 12.34.

Although the nature of the offenses and the potential lengths of their sentences are relatively minor in comparison to first- and second-degree felonies, they are, nonetheless, felonies. Two of the felonies are for fleeing in the face of an indictment charging murder and the third is for tampering with evidence—which in this case is a human body. These are serious offenses.

The bail amounts set for third-degree felonies range from $25,000 to $100,000. *See, e.g., Ex parte Lopes*, No. 05–04–00216–CR, 2004 WL 878295, at *1 (Tex. App.-Dallas April 26, 2004, pet. ref'd) (not designated for publication) (bail of $100,000 for stalking); *Ex parte Cosby*, Nos. 07–02–0482–CR & 07–02–0483–CR, 2003 WL 21994760, at *1 (Tex.App.-Amarillo Aug.21, 2003, no pet.) (not designated for publication) (bail of $100,000 for seventeen counts of possession of child pornography); *In re Hulin*, 31 S.W.3d 754, 755 (Tex.App.-Houston [1st Dist.] 2000, no pet.) (bail of $50,000 for criminal solicitation of a minor); *Ex parte McCullough*, 993 S.W.2d 836, 836–37 (Tex.App.-Waco 1999, no pet.) (bail of $25,000 for three counts of injury to an elderly person); *Applewhite v. State*, 872 S.W.2d 32, 33 (Tex.App.-Houston [1st Dist.] 1994, no pet.) (bail of $80,000 for theft). Considering this factor alone, a bail within this range would not be unreasonable.

### D. Ability to Make Bail

The fourth factor article 17.15 lists is the ability to make bail. Although again, the record is a little unclear as to the full extent of Durst's wealth, we know it might be immense but we also do not know precisely how much of his wealth he can access. We do know, as we mentioned earlier, that he rapidly procured approximately $300,000 for his trial.

In addition, Durst's civil lawyer testified that Durst has liquid assets of $2–4 million. Although he has other assets in trust, the corpus cannot be reached. The

evidence was conflicting regarding whether Durst has any property or real estate. Tax records showed Durst received income of approximately $400,000 last year from an annuity. However, the annuity cannot be executed upon. The lawyer testified that Durst could afford a bail of $50,000, but did not say the maximum amount of bail he could afford. The lawyers and the court discussed other evidence, introduced at the bond hearing, potentially showing that Durst may have great sums of money secreted in a non-extradition country.

In short, as we previously stated, although conflicting evidence exists, it appears Durst could make bail at least as high as one million dollars.

### E. Future Safety of the Victim and the Community

The fifth factor is the future safety of the victim and the community. Although one of the felonies is based on Durst's attempt to dispose of the body of a man Durst admitted killing in self-defense, Durst is not charged with a violent crime. The offenses involved here are, in essence, victimless crimes. In addition, Durst has never been convicted of a violent crime.

The State alleges, however, that Durst is a threat to the community at large. At the trial court hearing, the State and the trial judge referred to taped conversations of Durst in which he allegedly threatened to hurt other people, and Durst's own lawyers acknowledged that Durst's brother is afraid of him. Based on this, the State argued that Durst is a danger to the community. The State did not produce these tapes on appeal, so we have not listened to them. But the trial judge did listen to them and based her decision in large part on these tapes and other events also not in the record.

These taped conversations and other events obviously concerned the trial judge and made her fear for others' safety. We cannot assume that her fears were un-founded, nor does the record discredit her fears. For these reasons, this factor supports a higher, rather than a lower bail.

### F. The Remaining Factors

The remaining factors, an established work record, family ties to Galveston, length of residence, and past record of appearing for trial, also hurt Durst's chances for a lower, rather than higher bail. Durst has no work record. He has no family ties to Galveston. He has not lived in Galveston long. And, he fled the last time he had a trial setting, although the charge he faced then was murder, not third-degree felonies. His lawyers argued he is less likely to flee these charges than his murder charge. However, even if we accept the argument as valid, these factors overall point to a high bail—well over what Durst paid the first time.

### G. Calculating the Damage Done by the Article 17.15 Factors

As a whole, the article 17.15 factors do not support a low bail, not even a bail of $50,000 as Durst has requested.

Only the third factor, the nature of the offense, supports a lower bail. Generally, the case law states that this is the primary factor to be considered. *See, e.g., Ex parte Rubac*, 611 S.W.2d 848 at 849 ("The primary factors are the length of the sentence and the nature of the offense."); *Aviles v. State*, 26 S.W.3d 696, 698–99 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd) ("[T]wo factors should be given great weight when determining the amount of bail: the nature of the offense and the length of the sentence."); *Hulin*, 31 S.W.3d at 759 ("The primary factors to be considered in determining what constitutes reasonable bail are the punishment that can be imposed and the nature of the offense."). In most cases, it probably is the controlling factor. But in a case such as this—in which the defendant presents a triple risk of wealth, prior flight, and a danger to the community—it cannot be the

controlling factor. It is still important, but not controlling. Also, none of the third-degree felony cases within the range had all three additional factors we have here. *See Lopes*, 2004 WL 878295; *Cosby*, 2003 WL 21994760; *Hulin*, 31 S.W.3d 754; *McCullough*, 993 S.W.2d 836; *Applewhite*, 872 S.W.2d 32. Looking only at the article 17.15 factors, then, our research supports bail well over the $300,000 set last time. But, our inquiry cannot stop there, because the court did take some action that would decrease the large bail the factors support; it imposed conditions. Before we decide upon a specific bail amount, we must consider those conditions.

## III. CONDITIONS THE COURT IMPOSED

▮ As noted above, at Durst's urging, the trial court set conditions intended to secure Durst's appearance and to ensure that he does not leave Galveston or Harris Counties. These are some of the conditions the judge set:

- Durst must submit to twenty-four-hour supervision by a licensed peace officer of the State of Texas and he must pay the costs of supervision;
- Durst may not leave Galveston or Harris Counties without prior written approval of the trial court;
- Durst must surrender his passport and not obtain any others;
- Durst must be home by 7:00 p.m. unless the court approves another time in advance; and,
- Durst must appear in court every Friday morning at 9:00 a.m.[3]

Clearly, these conditions greatly restrict Durst's ability to flee. The question before us is how much they should impact bail. Little guides us.

In discussing bail, article 17.15 does not mention conditions. However, some cases

have considered conditions as a means of assuring a defendant's appearance or of protecting the victim and society. *See Nguyen v. State*, 881 S.W.2d 141, 144 (Tex. App.-Houston [1st Dist.] 1994, no pet.) (considering the appellant's agreement to electronic monitoring as a condition of bail); *see also Ex parte Wilson*, No. 01–00–00140–CR, 2000 WL 964570, at *2 (Tex. App.-Houston [1st Dist.] July 12, 2000) (not designated for publication) ("Factors that favor a reduction in bail are ... his willingness to be electronically monitored....").

These conditions alone are calculated to ensure that Durst appears for trial. Moreover, public safety is reinforced with the twenty-four-hour supervision by licensed peace officers. To thwart this supervision, Durst would have to conspire with others and take the high risk of injury or death. On the whole, these conditions greatly swing the balance close to the range of bail for third-degree felonies. As a result, we hold an appropriate balance of the conditions with the article 17.15 factors supports bail of $150,000 for each offense, making the total bail $450,000.

## IV. CONCLUSION

In conclusion, we reverse the trial court's orders denying Durst's applications for writs of habeas corpus and set bail at $150,000 in each cause number. Because Durst's applications for writs of habeas corpus did not challenge the conditions the trial judge imposed, those portions of the trial court's orders remain in effect.

EDELMAN, J., dissenting.

RICHARD H. EDELMAN, Justice, dissenting.

I disagree with the decision of the majority to set bail in this case rather than to

---

**3.** Durst does not appeal any of the conditions imposed.

remand the matter for a redetermination by the trial court. If our opinion fails to give the trial court adequate guidance to set a constitutional bail amount, the deficiency should be corrected. Beyond that, the trial court has the same body of law to guide it as we have and considerably more experience in setting bail than we do. Moreover, the trial court has an important capability that we lack, namely, to conduct a further evidentiary hearing to develop a better factual record to support a new bail amount and perhaps tailor the non-monetary conditions of bail accordingly. For us to nevertheless conclude that we are in a better position than the trial court to reset bail suggests either a complete lack of confidence in the trial court, considerable presumptuousness on our part, or just a desire to elevate expedience over our more proper role of reviewing trial court determinations rather than making them ourselves.