In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-06-104 CR


NO. 09-06-105 CR


____________________



EX PARTE BILLIE WARREN SMITH






On Appeal from the 75th District Court


Liberty County, Texas


Trial Cause Nos. CR508, CR509






MEMORANDUM OPINION


 Billie Warren Smith appeals the trial court's reduction of bail in two separate but
related cases. The appellate record before us is devoid of any details of the underlying
offenses alleged. Appellant was arrested under warrants issued by a Justice of the Peace for
the felony offenses of Aggravated Sexual Assault of a Child, and for Indecency with a Child. 
Bail was set in the Aggravated Sexual Assault cause at $250,000, and in the Indecency cause
at $200,000. Appellant then filed with the trial court separate petitions for writ of habeas
corpus alleging the amounts set for his bail were unreasonable, and were a violation of Tex.
Const. art. I, § 11 and Tex. Code Crim. Proc. Ann. art. 17.15 (Vernon 2005). 

 The trial court conducted an evidentiary hearing on the merits of the petitions and
ultimately issued orders reducing the bail amounts to $125,000 and to $75,000, respectively. 
Because the trial court ruled on the merits of appellant's petitions following an evidentiary
hearing, we have jurisdiction over the appeals. See Ex parte Hargett, 819 S.W.2d 866, 869
(Tex. Crim. App. 1991). Appellant's brief combines the argument for his separate appeals
and we will likewise combine our analysis in a single opinion. 

 Bail shall not be excessive. Tex. Const. art. I, § 13. "All prisoners shall be bailable
by sufficient sureties" in non-capital offenses. Tex. Const. art. I, § 11. "'Bail' is the
security given by the accused that he will appear and answer before the proper court the
accusation brought against him, and includes a bail bond or a personal bond." Tex. Code
Crim. Proc. Ann. art. 17.01 (Vernon 2005). The primary purpose of an appearance bond
is to secure the presence of the accused at trial on the offense charged. See Ex parte
Rodriguez, 595 S.W.2d 549, 550 (Tex. Crim. App. 1980) (citing Ex parte Vasquez, 558
S.W.2d 477 (Tex. Crim. App. 1977)). Bail should be set high enough to give reasonable
assurance that the defendant will appear at trial, but it should not operate as an instrument
of oppression. See Ex parte Ivey, 594 S.W.2d 98, 99 (Tex. Crim. App. 1980)(citing Ex parte
Bufkin, 553 S.W.2d 116 (Tex. Crim. App. 1977)). 

 The burden is on the person seeking the reduction to demonstrate that the bail set is
excessive. See Ex parte Charlesworth, 600 S.W.2d 316, 317 (Tex. Crim. App. [Panel Op.]
1980). The decision regarding a proper bail amount lies within the sound discretion of the
trial court. See Ex parte Green, 940 S.W.2d 799, 801 (Tex. App.--El Paso 1997, no pet.). 
Article 17.15 of the Texas Code of Criminal Procedure sets forth the criteria a trial court
must consider in setting bail:

 1. The bail shall be sufficiently high to give reasonable assurance that the
undertaking will be complied with.

 2. The power to require bail is not to be so used as to make it an instrument
of oppression.

 3. The nature of the offense and the circumstances under which it was
committed are to be considered.

 4. The ability to make bail is to be regarded, and proof may be taken upon this
point. 

 5. The future safety of a victim of the alleged offense and the community shall
be considered.


Tex. Code Crim. Proc. Ann. art. 17.15 (Vernon 2005). The trial court may also consider:
"(1) the accused's work record; (2) the accused's family and community ties; (3) the
accused's length of residency; (4) the accused's prior criminal record; (5) the accused's
conformity with previous bond conditions; (6) the existence of outstanding bonds, if any; and
(7) aggravating circumstances alleged to have been involved in the charged offense."
Maldonado v. State, 999 S.W.2d 91, 93 (Tex. App.--Houston [14th Dist.] 1999, pet. ref'd)
(citing Ex parte Rubac, 611 S.W.2d 848, 849-50 (Tex. Crim. App. [Panel Op.] 1981)). 

 In the instant case, appellant called three witnesses in support of his petitions. The
State presented no witnesses nor submitted any evidence to the trial court in an attempt to
controvert the testimony of appellant's witnesses. Jody Lyn Marie Goodwin, an attorney
licensed in Texas with a practice in Harlingen, testified that appellant is her maternal
grandfather. She further testified that, at the time of the hearing (February 28, 2006),
appellant was two-weeks shy of his eightieth birthday. Her testimony further indicated that
appellant resided in Ozark, Arkansas, for the past thirteen to fifteen years, that he had no
prior criminal history, that his employment history included working as a construction
contractor and a police officer, and that at one time appellant ran for the office of sheriff of
Liberty County, Texas. Goodwin stated that she thought it unlikely appellant would flee if
he were free on bond because he spent most of his life in Liberty and has many contacts in
the area and family members who reside in Liberty County. Goodwin was aware of the two
pending criminal charges against appellant and that the charges were based on events alleged
to have taken place approximately nine years ago. During the intervening nine-year period,
Goodwin was unaware of any other allegations of wrongdoing or criminal behavior on the
part of appellant. Goodwin also testified that appellant was presently married, and had been
married for some sixty years to his wife. 

 Goodwin stated that appellant did not have the financial ability to make a $450,000
bond as his source of income was mainly from social security as he has no pension, and that
his assets consist of his home in Arkansas, approximate value of $30,000, and two older
vehicles, a Dodge van, and a Lincoln automobile. She further testified that appellant has
health problems including a prior back surgery, a prior diagnosis of cancer, liver problems,
and stomach ulcers, and that he receives Medicare. She was also of the opinion that, if
released on bond, appellant would present no danger to the community. Goodwin indicated
that she could assist appellant with "maybe five thousand dollars" for his bail, but not
$450,000. When asked by the State if she was aware of an unrelated twenty-year-old
allegation that appellant "was accused of molesting a granddaughter," Goodwin replied that
she was not. Goodwin was aware that appellant was a long-time friend of the family of the
complainant in the instant cases. Goodwin stated that, should appellant be released on bond,
she would make every effort to ensure appellant had no access to any children under
seventeen years of age. 

 The next witness was appellant's forty-five-year-old son, Brian Ward Smith. Except
for living in Baytown, Texas, for a "few months," Smith has resided in Liberty County since
approximately 1968 or 1969. He stated he has been a fire fighter for twenty-two years, with
the last twenty years with the City of Baytown Fire Department. Smith is married and has
two adult daughters and a teenage son. Smith described his relationship with appellant as
"very close" because he is appellant's only son. He stated that he visits with appellant three
or four times a year, and confirmed appellant's lack of any criminal history. He opined that
appellant was not a flight risk because appellant has "always been a man of his word. He
will be there." As the complainant in the instant offenses was eight years old at the time the
offenses were alleged to have been committed, Smith replied to the question regarding
appellant's danger to the community in the following way: 

 A. I understand the allegations. I have never, to my knowledge, seen him be
inappropriate with children, or even adults of any age. I don't believe that he
would be a danger to any one of my children. Like I said, my youngest is 13
and he resides with his mother. He wouldn't be around much at all. I'd have
no problems at all.


Smith also agreed that he would assist in complying with any reasonable conditions of bond
including ensuring that appellant is not permitted to be around children under seventeen years
of age. Smith further stated that his intention was to see that appellant made court
appearances as necessary. Smith stated that he had no savings, but that he would be willing
to take early retirement and use what retirement money becomes available to assist appellant
in making bond. Smith also testified that in addition to social security income, appellant did
receive between five hundred and six hundred dollars per month for working as a museum
curator in Ozark, Arkansas. 

 Smith confirmed that appellant had no passport or ties to any communities outside the
United States, and that appellant had one sister living in Harlingen, Texas, one sister living
in Kaufman, Texas, and two sisters living near Ozark, Arkansas. Smith also clarified that
appellant's cancer was in his kidney, necessitating its removal, and that appellant suffered
a broken back in the late 1960's. Also, because appellant had significant hearing impairment,
he had missed some of his medications during his confinement in the county jail. 

 Smith testified that the bail bond offices he contacted require a minimum ten percent
of the total bail amount, and require collateralization of the remaining amount, and that no
one in appellant's family has property of sufficient value to collateralize a $400,000 bail. 

 Although he testified he had no previous criminal convictions, Smith admitted on
cross-examination that he had been accused of indecency with a child, and would consider
anyone who sexually molested a child under seventeen years of age to be a danger to the
community. Smith was also aware that appellant had been friends with the complainant in
the instant cases and with her family. Smith further stated that his father lived in Liberty
County for approximately twenty-six or twenty-seven years before moving to Arkansas in
about 1996. Smith was also aware that appellant had a credit card with a limit of less than
$20,000, and that appellant used a portion of the available credit on the card to retain his trial
counsel. Smith testified that his father owned no other property than the home in Ozark,
Arkansas. He also stated that appellant had no bonds or stocks, had a checking account, but
Smith was unaware of any savings account. When asked for specifics about the amount he
would ultimately realize from his retirement account, Smith stated that after taxes, and after
paying his two ex-wives their respective shares of his retirement, he expected the final cash
amount to be approximately $20,000. As he concluded his testimony, Smith stated that he
was informed by appellant that two inmates had threatened to kill appellant by slitting his
throat, but Smith did not know if appellant had complained to jail personnel about the threats. 

 Appellant's final witness was Edd C. Blackwood, Jr., a licensed bail bondsman, who
resided in Houston. As a licensed bail bondsman for approximately twenty-six years,
Blackwood evaluates defendants and their families and makes risk assessments in deciding
whether or not to make a bond on a daily basis. Blackwood stated that he also assisted
families in gathering assets to collateralize and pay bond fees in the process of making a
surety bond. For purposes of the instant charges, Blackwood testified he met with members
of appellant's family and engaged in his normal risk-assessment process. Blackwood learned
that while appellant and his family are "really good hard-working people with good[,] strong
community ties[,]" the family had no assets he could use to collateralize the bonds needed. 
Blackwood stated that while he could possibly place a lien on appellant's real property in
Arkansas, he could not use Brian Smith's retirement and the family mentioned no other
assets. With regard to Blackwood's assessment of appellant as a flight risk, Blackwood
responded: 

 A. I don't mean to be flip, but the man is 80 years old. He's in bad health. 
All of his family is local except for the Arkansas community that he lives in. 
He's on - - he gets his money from the government. 

 You know, he's a smart enough man that if he wanted to run and hide,
I suppose he could, until the end of his life. I suppose he could do that. But
I'd be professionally surprised that he could do that. I think he would be
foolish to even attempt it, and he doesn't strike me as being a foolish man. He
seems to have been a man that's, aside from the charge, but for the rest of his
life he's been a very stable community-minded individual. 


 Blackwood testified that a defendant charged with aggravated sexual assault in Harris
County, Texas, would typically have a $30,000 bond, and a typical second-degree felony
charge would have a $20,000 bond. Blackwood stated that from all the information he had
on appellant and his family, the family could not collateralize a $50,000 bond, but
Blackwood added that if each family member signed a promissory note to cover a percentage
of the amount necessary to collateralize the entire bond amount he could possibly get
approval from his insurer to write a bond no higher than $50,000. On cross-examination, the
State attempted to have Blackwood clarify his position: 

 Q.[State] But you haven't explored the option of going - - with having them
co-sign or taking any kind of promissory note from family members in order
to make up the amount?


 A.[Blackwood] I'm sorry? Oh, to make the half a million dollar bond?


 Q. Yeah.


 A. It's impossible. It's not going to happen.


 Q. Did you try? Did you try seeing what it was about?


 A. They don't have the wherewithal to co-sign for half a million. I mean, if
they were to make payments on it for the rest of their lives they couldn't do it.


 Q. How many of the family members have you discussed this option, co-signing the promissory note?


 A. Just the members of the family that are here in the courtroom.


 Q. We've heard from Ms. Goodwin, we've heard from Mr. Smith, that's the
granddaughter and son of the Defendant?


 A. That's correct.


 Q. Are there any other family members?


 A. No, ma'am.


 Q. You know there are other family members?


 A. Yes, I do. And I have visited with the family that's here about the family
that's not here. And none of them are - - 


 Q. Now, let me ask you this: You're saying that - - well, you're saying that all
the family are local. . . . 


At that point, the State focused the questioning away from the appellant and his family's
financial condition. With the conclusion of Blackwood's testimony, appellant rested his
case, and the State offered no witnesses and "[n]o rebuttal." 

 Appellant's trial counsel urged the trial court to set bail on the aggravated sexual
assault at $30,000, and $20,000 on the indecency case. The State countered with the
argument that the court must "look at the threat to the complaining witness, the threat to the
community." The State also urged the trial court to "look at the nature of the offenses," but
only added "[i]t's a first degree felony offense, possible range of imprisonment for this
Defendant, if found guilty, would be a life sentence." The State reminded the trial court that
appellant was not a Liberty County resident, and further argued "[w]e have a set of
circumstances here where he has children that are in our County but he also has children out
of our County. He has family out of this State." While not contained in the written orders
re-setting appellant's bail amounts following the hearing, the trial court orally pronounced
conditions on appellant should he be released on bond, viz: 

 THE COURT: These are the conditions: Is that Mr. - - if Mr. Smith
makes bond, he will be required to personally contact my office by telephone
every other Friday. He will be enjoined from contacting, either directly [or]
indirectly, the complainant in this case, which has been identified as J747843,
or any female under the age of 17 years. He is not to come into contact with
any female under the age - - 17 or under. 

 

 . . . .


 THE COURT: In the event that I'm not contacted every (sic) Friday, or
my staff, then the bond will be automatically revoked. 


 [Trial Counsel]: Every other Friday?


 THE COURT: Every other Friday. Correct.


The State had argued for bond conditions and appellant joined in that request. 

 Upon the record before us, we find the evidence produced by appellant satisfies his
burden to demonstrate that the combined bail amounts are excessive. Significant is the fact
that the State produced no evidence to controvert or rebut appellant's evidence. The only
evidence presented to the trial court is uncontroverted that any amount above $50,000 would
result in a significant hardship for appellant to be able to make bond. While the $200,000
bail amount would certainly assure appellant's appearance, there is no evidence to the
contrary that, if released, appellant would not appear as required by the trial court. Being
four-times the amount the uncontested evidence indicates appellant could hope to accumulate
for a bond, the $200,000 amount is violative of article 17.15 as being more of "an instrument
of oppression." Blackwood stated that $50,000 would be the maximum amount for which
he could attempt to write a bond, with such an amount requiring appellant's family to sign
promissory notes for collateral. While his testimony is not wholly determinative, it is some
evidence. We decline the opportunity to allow bail bondsmen the right to effectively set bail
amounts for defendants. Under factors one, two, and four of article 17.15, appellant's
evidence favors a significantly lower bail amount. The fifth factor, "future safety of a victim
. . . and the community," is of paramount concern in cases of this nature. However, there was
no evidence before the trial court that in the nine intervening years between commission of
the alleged offenses and the date of the bond-reduction hearing appellant had any contact
with the victim or her family in any way, or that appellant had attempted to contact the victim
or her family after the allegations were brought to light.

 The third factor, the "nature of the offense and the circumstances under which it was
committed," naturally has some negative implications against appellant's plea for a lower
bail amount. However, the record contains no facts even hinting at the type of sexual contact
the complaining witness has alleged appellant engaged in under either offense. The record
does indicate that at the time of the offenses alleged, the complainant was approximately
eight or nine years of age, a female, and that appellant was a friend of her family. It also
appears that both offenses took place on one occasion and were perpetrated on the same
complainant. Nevertheless, appellant's excellent work record, lack of any prior criminal
history, lack of evidence of any "aggravating circumstances" involved in the charged
offenses, and significant personal and family ties to Liberty County substantially mitigate in
appellant's favor. The fact that appellant resides in Arkansas is attenuated by the evidence
that he is also eighty years of age and in poor health and, therefore, not a significant risk for
flight from prosecution. 

 As noted above, the amount of bail should be set sufficiently high to give reasonable
assurance that the accused will comply with the undertaking, but should not be set so high
as to be an instrument of oppression. See Ex parte Bufkin, 553 S.W.2d 116, 118 (Tex. Crim.
App. 1977). However, the assertion, or true fact, that a defendant would not be able to make
a bond of a certain amount is not, in and of itself, oppressive. The test for reasonableness is
not simply a question of whether or not the appellant can actually make bail. "Although the
ability to make bail is a factor to be considered, ability alone, even indigency, does not
control the amount of bail." Ex parte Charlesworth, 600 S.W.2d 316, 317 (Tex. Crim. App.
[Panel Op.] 1980)

 All of the record evidence indicates that appellant would appear for any scheduled
court date and would have the assistance of his son, Brian Smith, who is a resident of Liberty
County. Furthermore, a trial court may impose reasonable conditions upon setting bail for
a pre-trial accused that is related to the safety of the alleged victim and of the community. 
See Tex. Code Crim. Proc. Ann. art. 17.40(a) (Vernon 2005); Ex parte Anderer, 61 S.W.3d
398, 405-06 (Tex. Crim. App. 2001). The trial court in the instant case recognized the need
for reasonable conditions and appellant was in agreement with such conditions. Indeed, in
In re Durst, 148 S.W.3d 496, 501 (Tex. App.--Houston [14th Dist.] 2004, no pet.), the
Houston Court of Appeals included the conditions imposed by the trial court in its analysis
of whether or not Durst's bail was excessive. The Court found that "[t]hese conditions alone
are calculated to ensure that Durst appears for trial." Id. There, the trial court's conditions
for release were particularly tailored to Durst's checkered history of court appearance while
on bond as well as to his affluence. (e.g., "Durst must submit to twenty-four-hour supervision
by a licensed peace officer of the State of Texas and he must pay the costs of supervision."). 
Id. at 498-501. We have no doubt the trial court in the instant cases could further tailor
conditions of release should appellant make bond on the pending charges to fully ensure
appellant's attendance for any scheduled court proceedings. 

 Therefore, considering the record before us in light of the applicable law, we find that
the trial court abused its discretion in setting appellant's bail in both causes at a combined
total of $200,000. We reverse the trial court's order in Cause No. 508 setting bail at
$125,000, and render judgment that appellant is entitled to the relief sought to the extent that
his bail is reduced to $50,000, subject to such reasonable terms and conditions as may be
determined by the trial court. Likewise, we reverse the trial court's order in Cause No. 509
setting bail at $75,000, and render judgment the appellant is entitled to the relief sought to
the extent that his bail is reduced to $25,000, subject to such reasonable terms and conditions
as may be determined by the trial court. 

 REVERSED AND RENDERED.


 __________________________________

 CHARLES KREGER

 Justice

Submitted April 28, 2006

Opinion Delivered May 31, 2006

Do not publish


Before McKeithen, C.J., Gaultney and Kreger, JJ.

DISSENTING OPINION


 I respectfully dissent. Given the nature of the charged offenses, the punishment that
could be imposed, and appellant's few ties to the community, I do not see an abuse of
discretion by the trial court. See Ex parte Hulin, 31 S.W.3d 754, 759-62 (Tex. App.--Houston [1st Dist.] 2000, no pet.).

 ____________________________

 DAVID GAULTNEY

 Justice


Dissent Delivered

May 31, 2006

Do Not Publish