# NO. 12-23-00159-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *EX PARTE:* | *§* | *APPEAL FROM THE 217TH* |
| *OMARION LEWIS* | *§* | *JUDICIAL DISTRICT COURT* |
| | *§* | *ANGELINA COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Omarion Lewis appeals from the trial court's denial of his pretrial application for writ of habeas corpus seeking a bond reduction. We reverse and remand.

## BACKGROUND

A warrant was issued for Appellant's arrest for aggravated assault with a deadly weapon. Three co-defendants were also arrested for aggravated assault with a deadly weapon. At the time of the alleged offense,[1] Appellant was seventeen years old and a high school student. Accompanied by his mother, Appellant turned himself in, and he was subsequently indicted.[2] Appellant's bond was set at $500,000, and he filed an application for writ of habeas corpus, in which he sought reduction of his bond. In the motion, Appellant asserted that he is a United States citizen with no prior criminal record, and he asked the court to schedule an evidentiary hearing and to set a bond in a reasonable amount with reasonable conditions to allow him to obtain release pending trial. Appellant asserted that the amount of his bail "is unsupported by the evidence and law and is therefore excessive and unlawful."

---

[1] Public online jail records from Angelina County, Texas, indicate that the offense occurred on March 12, 2023.

[2] The indictment does not appear in the record, but the prosecutor stated at the beginning of the bond reduction hearing that Appellant was indicted.

At the hearing on the application, Appellant's mother, Betty Shankle, testified that she has worked as a correctional officer for twenty-two years and has never been in trouble with the law. Shankle explained that Appellant is a lifelong citizen of the United States and the State of Texas, is unemployed, did not graduate from high school, and has no money. Shankle contacted three bond companies, but each required a fee plus ten percent of the bond amount, and she testified that she can only afford a $30,000 bond. Shankle does not own a home, owns one vehicle, and does not have weapons in her home. Shankle testified that she would post bond for Appellant if it were reduced, and Appellant would reside with her. Shankle testified that although she resides in Wisconsin, she can move back to Texas to live with one of her sisters, and she would ensure that Appellant would appear at every court date and abide by the bond conditions. When asked by the prosecutor if she is aware that the victim died, Shankle testified, "I wasn't aware at the time." When Shankle learned that an arrest warrant for Appellant was issued, she immediately came to Texas and accompanied Appellant when he surrendered to the police. Shankle hopes that Appellant will obtain a GED and employment.

The trial court signed an order denying Appellant's application for writ of habeas corpus. This appeal followed.

## BOND AMOUNT

In one issue, Appellant argues that the trial court abused its discretion by declining to reduce the amount of his bail bond. The State did not file a brief.

## Standard of Review and Applicable Law

Because the decision regarding a proper bail amount lies within the sound discretion of the trial court, we review the trial court's denial of a request to reduce bail for an abuse of discretion. *See* TEX. CODE CRIM. PROC. ANN. art. 17.15 (West Supp. 2022); *Ex parte Rubac*, 611 S.W.2d 848, 850 (Tex. Crim. App. 1981); *Clemons v. State*, 220 S.W.3d 176, 178 (Tex. App.—Eastland 2007, no pet.). In determining whether the trial court abused its discretion, we do not substitute our judgment for that of the trial court. *Montgomery v. State*, 810 S.W.2d 372, 379-80 (Tex. Crim. App. 1990). We must determine whether the trial court acted arbitrarily or unreasonably, without reference to any guiding rules or principles. *Id*. at 380. A trial court abuses its discretion when its decision is so clearly wrong as to lie outside the zone of reasonable disagreement. *Id*. at 391 (op.

on reh'g).  The petitioner bears the burden of showing that the bail set is excessive. ***Rubac***, 611 S.W.2d at 849.

The purpose of setting a pretrial bond is to secure an appellant's presence at trial. *See **Ex parte Rodriguez***, 595 S.W.2d 549, 550 (Tex. Crim. App. [Panel Op.] 1980); ***Ex parte Rincon***, Nos. 04-13-00715-CR—04-13-00718-CR, 2014 WL 2443870, at *1 (Tex. App.—San Antonio May 28, 2014, no pet.) (mem. op., not designated for publication).  The amount of bond necessary to achieve said purpose is committed to the trial court's sound discretion; however, the trial court's discretion is bounded and guided by constitutional and statutory provisions.  *See **Ex parte Estrada***, 398 S.W.3d 723, 724 (Tex. App.—San Antonio 2008, no pet.).  The federal constitution, our state constitution, and our state laws prohibit "excessive" bail. U.S. CONST. Amend. VIII, TEX. CONST. art. I, § 13; TEX. CODE CRIM. PROC. ANN. art. 1.09 (West 2005).

"[B]ail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with[;] however, "[t]he power to require bail is not to be so used as to make it an instrument of oppression."   TEX. CODE CRIM. PROC. ANN. art. 17.15(1), (2).  Although a defendant's ability to make bail must be considered, it is not controlling.  *See id*. art. 17.15(4); ***Rodriguez***, 595 S.W.2d at 550. The primary considerations when assessing the reasonableness of bail are the punishments that can be imposed and the nature of the offense.  ***Ex parte Ramirez-Hernandez***, 642 S.W.3d 907, 917 (Tex. App.—San Antonio 2022, no pet.); ***Ex parte Melartin***, 464 S.W.3d 789, 792 (Tex. App.—Houston [14th Dist.] 2015, no pet.).  The trial court must also consider the safety of law enforcement and the community.[3]  TEX. CODE CRIM. PROC. ANN. art. 17.15(5).  Additional factors to be weighed in determining the amount of bond include (1) the accused's work record, (2) the accused's family and community ties, (3) the accused's length of residency, (4) the accused's prior criminal record, (5) the accused's conformity with previous bond conditions, (6) the existence of other outstanding bonds, if any, and (7) aggravating circumstances allegedly involved in the charged offense.  *See **Rubac***, 611 S.W.2d at 849-50.

## Analysis

We begin by summarizing the evidence adduced at the hearing regarding the nature of the offense and the potential punishments, as well as other applicable factors.  Appellant is charged with aggravated assault with a deadly weapon, and the prosecutor indicated that the victim died of his injuries.  The nature of the offense and the potential punishment weigh in favor of a somewhat

---

[3] The safety of the victim is also a factor; however, in this case, the victim is deceased.

high bail amount. If convicted of the second-degree felony offense of aggravated assault with a deadly weapon, Appellant faces a punishment range of two to twenty years in prison and a fine of up to $10,000. *See* TEX. PENAL CODE ANN. §§ 12.33 (West 2019), 22.02(a)(2), (b) (West Supp. 2022). The safety of the community also supports a somewhat high bail amount. *See* TEX. CODE CRIM. PRO. ANN. art. 17.15(a)(5).

Shankle testified that if Appellant's bond were lowered and he were released on bond, he would reside with her at her sister's residence in Texas, and she hopes he would work toward obtaining a GED. Shankle does not own a residence, she only owns one vehicle, and she explained that Appellant is unemployed and has no money. Shankle testified that she could only pay the required amount for a $30,000 bond. In addition, Shankle's testimony suggests that Appellant's prospects for employment might be limited by his young age and lack of a high school diploma. Shankle believed she could ensure Appellant's compliance with bond conditions and his appearance for any court proceedings. Appellant is a lifelong citizen of the United States and the State of Texas. No evidence was adduced suggesting that Appellant might flee or attempt to avoid prosecution if he were released, and the record indicates that Appellant voluntarily surrendered to the authorities, accompanied by Shankle.

Our review of the evidence indicates that the bond is substantially higher than Appellant can realistically afford to pay. *See Ramirez-Hernandez*, 642 S.W.3d at 920. Shankle contacted three bond companies, and she determined that she could not afford to pay Appellant's bail of $500,000, but could afford a bond of $30,000. A defendant's inability to make bail does not automatically render the amount excessive. *Ex parte Mazuera*, No. 01-21-00612-CR, 2022 WL 1110989, at *9 (Tex. App.—Houston [1st Dist.] Apr. 14, 2022, no pet.) (mem. op., not designated for publication); *see also Ex parte Vance*, 608 S.W.2d 681, 683 (Tex. Crim. App. 1980). If a defendant's ability to make bail controlled, the trial court's role in setting the amount of bail would be eliminated, and the defendant would be in the position to determine the amount of bail, which is antithetical to the purpose of a bond. *See Milner v. State*, 263 S.W.3d 146, 150 (Tex. App.—Houston [1st Dist.] 2006, no pet.). However, bail set in an amount that cannot be satisfied can potentially displace the presumption of innocence. *Mazuera*, 2022 WL 1110989, at *9, *see also Ex parte Bogia*, 56 S.W.3d 835, 840 (Tex. App.—Houston [1st Dist.] 2001, no pet.).

Public online jail records of Angelina County, Texas, indicate that Appellant was booked into the Angelina County Sheriff's Office on March 17, 2023. Appellant states in his brief, and

4

public online jail records indicate, that bond for one of his co-defendants, Jaykeevien Collins, was set at $50,000.[4]  Public online jail records indicate that bond for the other two co-defendants, Zahdyn Brooks and Jaiquies Lewis, was set at $500,000.  The limited record before us does not reveal the circumstances surrounding the alleged offense or the particular roles Appellant and the three co-defendants are accused of playing in said offense, but public records indicate that all four defendants were charged with the second-degree felony offense of aggravated assault with a deadly weapon.

Appellant was eighteen years old at the time of the bond hearing, is unemployed, lacks a high school diploma, and must rely upon Shankle to pay any bail bond.  Although Appellant's inability to make bail or post a bond since his arrest is not dispositive, it is a factor to be considered.  *See Rodriguez*, 595 S.W.2d at 550; *Mazuera*, 2022 WL 1110989, at *9*; see also Rincon*, 2014 WL 2443870, at *3.  When bail is so high that the defendant cannot realistically pay for it, the trial court essentially displaces the presumption of innocence. *See Mazuera*, 2022 WL 1110989, at *10. Bail cannot be used as an instrument of oppression.  *Id*.; *see also Ex parte Durst*, 148 S.W.3d 496, 499 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (holding that when bail amount was set solely to prevent defendant from being released from jail, it was being used as an instrument of oppression).  Shankle testified at the hearing that she could afford to pay a $30,000 bond, yet the trial court set bond at an amount almost seventeen times what Appellant could reasonably pay, which constitutes a de facto setting of no bond.  *See DePena v. State*, 56 S.W.3d 926, 929 (Tex. App.—Corpus Christi 2001, no pet.) (holding that setting bail at four times what appellant could reasonably pay was a de facto setting of no bond).

Case law is of somewhat limited value in addressing the issue of the appropriate amount of bail "because appellate decisions on bail matters are often brief and avoid extended discussions, and because the 'cases are so individualized that generalization from results reached in others is difficult.'"  *Ex parte Beard*, 92 S.W.3d 566, 571 (Tex. App.—Austin 2002, pet. ref'd) (quoting 41 George E. Dix and Robert O. Dawson, Texas Practice: Criminal Practice and Procedure § 16.51 (2d ed. 2001)).  However, combined with the factors discussed above, a comparison of the bail amount in this case to the bail amounts in cases decided by other intermediate appellate courts is instructive and leads us to conclude that Appellant's bail of $500,000 is excessively high.  *See Ex parte Taylor*, No. 02-20-00010-CR, 2020 WL 1963788, at *8-9 (Tex. App.—Fort Worth Apr.

---

[4] The prosecutor stated the co-defendants' names at the bond reduction hearing.

23, 2020, no pet.) (mem. op., not designated for publication) (reversing bail amount of $500,000 on first-degree felony charge of aggravated robbery); *Ex parte Bogia*, 56 S.W.3d 835, 836, 840 (Tex. App.—Houston [1st Dist.] 2001, no pet.) (reversing $360,000 bail in second-degree felony theft case); *Ex parte McDonald*, 852 S.W.2d 730, 736 (Tex. App.—San Antonio 1993, no writ) (reversing $1,000,000 bail on charge of capital murder when appellant voluntarily surrendered, facts surrounding offense were not developed at bond reduction hearing, and appellant could not afford the bond); *see also Ex parte Reyes-Martinez*, 653 S.W.3d 273, 277, 283 (Tex. App.—Austin 2022, no pet.) (upholding bail of $50,000 on charge of aggravated assault with deadly weapon and $300,000 for felony murder); *Ex parte Banks*, Nos. 13-22-00330-CR, 13-22-00331-CR, 2023 WL 3371920, at *1, 5 (Tex. App.—Corpus Christi May 11, 2023) (mem. op., not designated for publication) (upholding bail of $350,000 on charge of aggravated assault with deadly weapon and $100,000 for unlawful possession of firearm by felon); *Clemons*, 220 S.W.3d at 179 (upholding bail of $400,000 when defendant was charged with indecency with a child and aggravated assault and made comments about fleeing to Mexico); *but see Ex parte Murray*, Nos. 02-13-00151-CR, 02-13-00152-CR, 02-13-00153-CR, 2013 WL 5425312, at *3 (Tex. App.—Fort Worth Sept. 26, 2013, no pet.) (mem. op., not designated for publication) (upholding bail of $750,000 for charge of aggravated assault with deadly weapon when appellant was also charged with deadly conduct and theft of firearm).

As discussed above, the nature of the offense, the potential punishment Appellant faces, and the safety of the community support a somewhat high bail amount; however, the $500,000 bail set by the trial court is well beyond what Appellant can afford. Appellant is eighteen years old, lacks money, and is unemployed, and Shankle cannot afford to pay the bond on bail in the amount of $500,000. Appellant voluntarily surrendered and he has no previous criminal history, and no evidence was adduced indicating that he is a flight risk. Appellant would live with Shankle if he were released, and she testified that she would ensure that he would appear in court when required and would comply with the bond conditions. Appellant is not charged with a first-degree felony or capital murder.

After reviewing the record and considering the factors set forth in Article 17.15 and *Rubac*, we conclude that the trial court abused its discretion by denying Appellant's request for bail reduction and hold that the amount of Appellant's bail is unsupported by the evidence and therefore excessive. We sustain Appellant's sole issue.

## DISPOSITION

Having sustained Appellant's sole issue, we ***reverse*** and ***remand*** this case to the trial court for further proceedings consistent with this opinion.

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered September 20, 2023
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)

7



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

### SEPTEMBER 20, 2023

### NO. 12-23-00159-CR

### EX PARTE: OMARION LEWIS

Appeal from the 217th District Court
of Angelina County, Texas (Tr.Ct.No. W-020-23)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, because it is the opinion of this Court that there was error in the judgment of the court below, it is ORDERED, ADJUDGED and DECREED by this Court that the judgment be **reversed** and the cause **remanded** to the trial court **for further proceedings** in accordance with the opinion of this Court; and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*