**Reversed and Remanded and Memorandum Opinion filed December 5, 2023**



In The

# 𝕱𝖔𝖚𝖗𝖙𝖊𝖊𝖓𝖙𝖍 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕬𝖕𝖕𝖊𝖆𝖑𝖘

## NO. 14-23-00252-CR

### EX PARTE DANIEL CURRAN

**On Appeal from the 412th District Court
Brazoria County, Texas
Trial Court Cause No. 96482-CR**

## MEMORANDUM OPINION

In this appeal of the denial of an application for writ of habeas corpus, we consider whether the trial court abused its discretion in setting appellant's pretrial bail at $25 million for capital murder. Because we hold this amount to be unprecedented, we reverse and remand.

## Background

A grand jury indicted appellant Daniel Curran for the offense of capital murder during the course of the offense of aggravated robbery and/or burglary of a habitation. *See* Tex. Penal Code Ann. § 19.03(a)(2). The indictment specifies that

appellant caused the death of Cory Bayless by shooting him with a firearm. Appellant's bond was set at $25 million. Appellant filed a writ of habeas corpus to reduce the bond. After a hearing, the trial court denied the motion.

During the hearing, appellant presented one witness: his older brother Jorge Benitez. The State did not present any witnesses. Neither side made closing arguments. When the trial court made its oral ruling in court, the judge stated that he had reviewed the public safety report along with appellant's criminal history. Neither of those documents are in our record[i].

### *Appellant's Brother – Jorge Benitez*

Benitez testified that his brother, appellant, was born in Galveston and grew up in Brazoria County. Benitez explained that Benitez and his mother moved from Mexico to Texas in 1994 and the family has been living here ever since. Appellant has only left Texas for one trip to Mexico when he was two years old. According to Benitez, appellant does not have a passport.

Benitez has been employed for the last 13 years in sales for Pepsi and prior to that, he was in merchandising with Coca-Cola for 8 years. In his job at Pepsi, Benitez makes $65,000 a year. His wife works at Kroger making $22 an hour. They have three young children. The couple has car notes of $1,300 a month and mortgage payments of $2,200 a month. Benitez has already borrowed much of his 401k account to support his family during Covid lay-offs. Appellant's mother lives in Angleton working as a house-cleaner. Benitez testified that their mother has no investments accounts nor property she could sell for cash.

Benitez testified that appellant had a job at Sonic when he was in high school. Since then, he has heard that appellant had a job working on garage doors, but was unsure of how long appellant was employed. Benitez was unsure of

whether appellant had this job at the time of his arrest. Upon questioning, Benitez confirmed that appellant has "serious" felony arrests. According to Benitez, appellant has nothing he could sell for cash nor any investment accounts.

Benitez testified that his mother contacted bail bonding companies who informed her that they would need $2.5 million down for a $25 million bond. He confirmed that the family was unable to pull together $2.5 million to pay the bonding company.

Benitez said he was unsure if appellant could live with their mother if he was released on bond. He did not know where appellant was living at the time of his arrest. Benitez testified he would report appellant if he attempted to flee while he was out on bail.

The trial court denied appellant's application for writ of habeas for a reduction in the bond amount of $25 million. This appeal followed.

## Analysis

The right to be free from excessive bail is protected by the United States and Texas Constitutions. *See* U.S. Const. amend. VIII; Tex. Const. art. I, § 11. We review a challenge to the excessiveness of bail for an abuse of discretion. *See Ex parte Rubac*, 611 S.W.2d 848, 850 (Tex. Crim. App. [Panel Op.] 1981). Under this standard, we may not disturb the trial court's decision if it falls within the zone of reasonable disagreement. *See Ex parte Castillo–Lorente*, 420 S.W.3d 884, 887 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

The amount of bail required in any case is within the discretion of the trial court subject to the following rules:

1. The bail and any conditions of bail shall be sufficient to give reasonable assurance of compliance with the undertaking.

3

2. The power to require bail is not to be so used as an instrument of oppression.

3. The nature of the offense and the circumstances under which it was committed are to be considered, including whether the offense:

   (A) is an offense involving violence as defined by Article 17.03(b-3)(2); or

   (B) involves violence directed against a peace officer.

4. The ability to make bail shall be considered, and proof may be taken on this point.

5. The future safety of a victim of the alleged offense, law enforcement, and the community shall be considered.

6. The criminal history record information for the defendant, including information obtained through the statewide telecommunications system maintained by the Department of Public Safety and through the public safety report system developed under Article 17.021, shall be considered, including any acts of family violence, other pending criminal charges, and any instances in which the defendant failed to appear in court following released on bail.

7. The citizenship status of the defendant shall be considered.

Tex. Code Crim. Proc. Ann. art. 17.15.

In addition to these rules, case law provides that courts may consider the following set of factors: (l) the defendant's work record; (2) the defendant's family and community ties; (3) the defendant's length of residency; (4) the defendant's prior criminal record; (5) the defendant's conformity with previous bond conditions; (6) the existence of other outstanding bonds, if any; (7) the aggravating circumstances alleged to have been involved in the charged offense; and (8) whether the defendant is a citizen of the United States. *See Ex parte Rubac*, 611 S.W.2d 848, 850 (Tex. Crim. App. [Panel Op.] 1981); *Ex parte Rodriguez*, 595 S.W.2d 549, 550 n. 2 (Tex. Crim. App. [Panel Op.] 1980); *Ex parte Melartin*, 464

4

S.W.3d 789, 792 (Tex. App.—Houston [14th Dist.] 2015, no pet.).

### 1. Nature and circumstances of alleged offense

When determining reasonable bail, a trial court shall give the most weight to the nature of the offense and the length of possible sentence. *See Rubac*, 611 S.W.2d at 849; *Ex parte Nimnicht*, 467 S.W.3d 64, 67 (Tex. App.—San Antonio 2015, no pet.). It is appropriate to consider whether the offense alleged to have been committed involved violence in setting the amount of bail. *Nimnicht*, 467 S.W.3d at 67.

Appellant is alleged to have shot and killed someone while in the course of an armed robbery and/or the burglary of a home. Both murder and aggravated robbery are considered violent offenses. *See* Tex. Code Crim. Proc. Ann. art. 17.03(b-3)(2)(A), (P) (defining murder and aggravated robbery as an offense involving violence). Capital murder is a capital felony for which the sentence is either death or life without parole. *See* Tex. Penal Code Ann. §§ 19.03, 12.31(a). Appellant faces a minimum sentence of life without the possibility of parole and, at maximum, the death penalty. This potential sentence favors a high bail to avoid the potential of appellant fleeing. *See Ex parte Temple*, 595 S.W.3d 825, 829–30 (Tex. App.—Houston [14th Dist.] 2019, pet. ref'd) (affirming a $1 million bond where defendant's murder charge and conviction provided a strong incentive to flee).

### 2. Sufficiently high to assure appearance but not oppress

Bail needs to be in an amount sufficient to give reasonable assurance that the defendant will appear. When bail is set so high that a person cannot realistically pay it, however, the trial court essentially "displaces the presumption of innocence and replaces it with a guaranteed trial appearance." *Ex parte Bogia*, 56 S.W.3d 835, 840 (Tex. App.—Houston [1st Dist.] 2001, no pet.). Bail may not be used as

an instrument of oppression. *See Ex parte Guerra*, 383 S.W.3d 229, 233–34 (Tex. App.—San Antonio 2021, no pet.). Bail set in a particular amount becomes oppressive when it assumes the defendant cannot afford bail in that amount and when it is set for the express purpose of forcing the defendant to remain incarcerated. *See Ex parte Durst*, 148 S.W.3d 496, 499 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (where bail amount set "solely to prevent [defendant] from getting out of jail," "bail [was] being used as an instrument of oppression").

It is with this factor that the court takes issue with the high amount of bond set in this case. This court recently affirmed a $5 million bond on a capital murder charge; however, in that case, there was evidence appellant had the financial resources to afford the bond. *See Ex parte Lu*, No. 14-23-00023-CR, 2023 WL 5217789 at *3 (Tex. App.—Houston [14th Dist.] Aug. 15, 2023, no pet. h.) (mem. op.) (not designated for publication). Even in affirming that amount, we noted the high amount (which is five times less than the bond set in this case), but held that appellant's financial resources and the heinous facts of the alleged offense warranted the "very high" amount. *Id*. Here, there was no evidence presented that appellant had the resources to afford a $25 million bond amount.

The Waco Court of Appeals overturned a $5 million bond amount on two counts of capital murder, stating "[t]he State has not provided the court with any precedent upholding bail in the amount of $5 million or anywhere near that amount." *Ex parte Brossett*, 524 S.W.3d 273, 277 (Tex. App.—Waco 2016, pet. ref'd). Again, the bond was five times less than here and the appellant in that case was charged with two counts of capital murder.

The Court of Criminal Appeals reversed the Amarillo Court of Appeals' affirmance of a $10 million bond on two counts of capital murder. *Ex parte Dixon*, No. PD-0398-15, 2015 WL 5453313 at *2-3 (Tex. Crim. App. 2015) (not

designated for publication). In that case, the judge making the habeas ruling presided over appellant's trial, which resulted in a mistrial. The Court of Criminal Appeals held that the Amarillo Court of Appeals erred by according "special deference to the ruling of the habeas court because that judge was also the trial judge who presided over appellant's trial, and therefore, has already seen the evidence." *Id*. at *2. The Court of Criminal Appeals ordered appellant's bail reduced to $2 million. *Id*. at *3.

Aside from a 2004 opinion from this court (in which we reversed a $3 billion bond), there are no cases discussing a bond as high as that set in this case. *See Durst*, 148 S.W.3d 496. From our record, we can see no reason for setting the bond at $25 million, other than for the express purpose of forcing appellant to remain incarcerated.

This factor weighs strongly against finding the amount of bond to be reasonable.

### 3. Ability to make bail

To demonstrate inability to make bail, a defendant generally must establish his and his family's funds have been exhausted. *Ex parte Dupuy*, 498 S.W.3d at 234–35. The accused's ability to make bail is only one factor to be considered in determining the appropriate amount of bail. *Id*. "If the ability to make bond in a specified amount controlled, then the role of the trial court in setting bond would be completely eliminated, and the accused would be in the unique posture of determining what his bond should be." *Id*. (quoting *Ex parte Miller*, 631 S.W.2d 825, 827 (Tex. App.—Fort Worth 1982, pet. ref'd)).

During the hearing, the defense presented an account statement from an account belonging to appellant. That statement showed appellant had $5.35 in his

account. Appellant's application for a court-appointed attorney reflected that he was unemployed, but had previously worked on garage doors for $15 an hour. Appellant's brother testified that he and his mother would be unable to arrange for a $2.5 million security on the $25 million bond. His testimony regarding his and his mother's employment supported this conclusion. This factor weighs against the $25 million dollar bond.

### 4. Future safety of the victims and the community

The trial court must also consider the future safety of the victim of the alleged offenses and the community in setting appellant's bail amounts. *See* Tex. Code Crim. Proc. Ann. art. 17.15(5).

Appellant is alleged to have shot and killed Cory Bayless while attempting or committing the armed robbery of Toby Bayless and while attempting or committing to burglarize the home of Jamie Bayless. The remaining members of the Bayless family, who may be called as witnesses against appellant, face a safety risk if appellant is released. This factor supports a high bond amount.

### 5. Criminal history record

Our record does not contain the criminal history report that the trial court reviewed. Nor did the State put his criminal history into the record. However, there is some evidence that appellant has a substantial criminal history. In his application for a court-appointed attorney, appellant indicates he has been struggling to find employment "with 9 felonies." Additionally, during the hearing appellant's brother confirmed that appellant has serious felony arrests. This factor weighs in favor of a high bond amount.

### 6. *Rubac* factors

*Appellant's work record.* According to appellant's brother, appellant held a

8

job at some point while he was in high school. There was some evidence appellant worked for a garage door servicing business; however, it is unclear how long he had this job. This insubstantial work record supports a high bond.

***Appellant's family and community ties.*** Appellant's mother and brother both live in the area; however, the testimony provided is unclear as to whether either would be willing to allow him to live at their homes while he is out on bond. Additionally, on his application for a court-appointed attorney appellant indicated that his wife lives in Mexico. This supports a high bond.

***Length of appellant's residency.*** Appellant has lived in the area for his entire life. This factor supports a lowered-bond amount.

***Appellant's prior criminal record.*** The record provides some evidence that appellant has a substantial criminal record. This factor supports a high bond.

***Appellant's other bonds.*** The record did not reflect whether appellant had ever been released on any bonds. This factor is neutral.

***Aggravating circumstances in the charged offense.*** Appellant is alleged to have used a firearm to murder Cory Bayless while in the course of committing an aggravated robbery and/or the burglary of a habitation. This factor supports a high bond.

On balance, the *Rubac* factors support a high bond. However, the bond set in this case is unprecedented. The trial court could and should have set a bond high enough to be protective of these factors without wading into unprecedented territory. *See Durst*, 148 S.W.3d at 499 ("Even though we are lowering the amount of bail, this record still supports a high bail.").

## CONCLUSION

Although the charge against appellant for capital murder is a violent offense

9

with either a life-long sentence or death, a $25 million bond in these circumstances constitutes a *de facto* setting of no bond. *See DePena v. State*, 56 S.W.3d 926, 929 (Tex. App.—Corpus Christi–Edinburg 2001, no pet.) (concluding that by setting the bond four times higher than what appellant could afford, the court set a *de facto* no bond). Because the amount set in this case is wholly unprecedented and without specific supporting evidence, we hold the trial court abused its discretion. We reverse and remand for the setting of a bond amount consistent with this court's opinion.

/s/     Tracy Christopher
Chief Justice

Panel consists of Chief Justice Christopher and Justices Wise and Jewell.
Do Not Publish — Tex. R. App. P. 47.2(b)

---

[i] The new statute requiring judges to review the public safety report does not provide a mechanism for the appellate courts to see what the trial judge reviewed. *See* Tex. Code Crim. Proc. art. Ann. 17.022(d)(1). Even if our court reviewed the report now, we could not be sure that it is the same report that the trial judge reviewed.