**Opinion issued February 11, 2021**



In The

# Court of Appeals

For The

# First District of Texas

————————————

**NO. 01-20-00572-CR**

**NO. 01-20-00573-CR**

**NO. 01-20-00574-CR**

————————————

**EX PARTE MICHAEL ANTHONY ANDERSON, Appellant**

---

**On Appeal from the 230th District Court**
**Harris County, Texas**
**Trial Court Case Nos. 1680889, 1680892, 1680893**

---

## MEMORANDUM OPINION

Appellant, Michael Anthony Anderson, challenges the trial court's orders in three separate trial court cases denying his pretrial applications for writ of habeas

corpus.[1] In two issues, appellant contends that the trial court erred in denying him habeas relief.

We affirm.

## Background

Appellant is charged with three separate felony offenses of driving while intoxicated ("DWI"), third offense.[2]

### *April 2019 DWI, Third Offense*

Appellant was arrested on April 15, 2019 for the felony offense of DWI, third offense. A Harris County Grand Jury then issued a true bill of indictment, alleging that appellant, on or about April 14, 2019, "unlawfully[] operate[d] a motor vehicle in a public place while intoxicated." The indictment further alleged that previously, on December 14, 2015, appellant was convicted of the offense of DWI in trial court cause number 2057262 in the County Criminal Court at Law No. 8 in Harris County, Texas, and on November 21, 2014, appellant was convicted of the offense of DWI in trial cause number 14T2814 in Cobb County State Court in Cobb County, Georgia.[3]

---

[1]  *See* TEX. R. APP. P. 31.

[2]  *See* TEX. PENAL CODE ANN. §§ 49.04(a), 49.09(b)(2) (offense of DWI, third offense, constitutes third-degree felony offense).

[3]  *See id.* §§ 49.04(a), 49.09(b)(2); appellate court cause no. 01-20-00572-CR, trial court cause no. 1680889.

2

The trial court set appellant's bail at $35,000. Appellant posted bond and was released from custody. The trial court placed appellant on pretrial community supervision and imposed conditions[4] on appellant's release on bond, including:

- Appellant "will be supervised by [the] Harris County Community Supervision and Corrections [Department] (HCCSCD)" and "will pay to and through HCCSCD a supervision fee of $25.00 per month and a $2.00 transaction fee for each payment";

- Appellant "shall personally appear in court, on time, every time th[e] case is set on the Court[']s docket";

- Appellant "shall commit no crime and shall not engage in any conduct that could result in his[] arrest";

- Appellant "shall not operate a motor vehicle unless it is equipped with a camera-equipped, deep-lung breath analysis mechanism approved by the Texas Department of Public Safety that makes impractical the operation of a motor vehicle if ethyl alcohol is detected in his[] breath. . . . [Appellant] must comply with all required equipment and maintenance service, and . . . comply with testing protocols" (the "Ignition Interlock Device Restriction");

- Appellant shall "submit to DRUG AND ALCOHOL testing" and "pay [a] drug testing fee of $10.00 monthly";

- Appellant "must not use, possess, or consume alcohol"; and

- Appellant "must not use, possess, or consume marijuana or any controlled substance or dangerous drug unless obtained pursuant to a lawful prescription for [appellant] issued by a medical doctor. [Appellant] will provide a copy of all such prescriptions to his supervising officer in advance."

---

[4] A copy of appellant's bond conditions related to the April 14, 2019 DWI felony offense was admitted into evidence at the hearing on appellant's applications for writ of habeas corpus.

3

Related to the Ignition Interlock Device Restriction imposed by the trial court,[5] appellant was ordered not to "drive[] or operate a motor vehicle unless it [was] equipped with an ignition interlock device," not to "adjust, tamper with, or attempt to circumvent the [ignition interlock] device," to "comply with all requirements of the ignition interlock program of the monitoring agency," to "provide proof of the ignition interlock device installation to the monitoring agency no later than the 30th day after the date of [appellant's] release from custody," and to "submit the [ignition interlock] device for inspection and recalibration every" thirty days.

On June 6, 2019, the State filed a Bond Condition Violation Report[6] stating that appellant had violated certain conditions of his release on bond by "using, possessing, or consuming a controlled substance, dangerous drug, marihuana, or alcohol" and failing to pay fees for "drug and alcohol testing" and supervision. The violation report noted that appellant had consumed alcohol on April 26, 2019 and April 27, 2019. The trial court ordered appellant's bond revoked and issued an alias capias for appellant's arrest. The trial court later reinstated appellant's bond, and appellant continued on pretrial community supervision.

---

[5] On April 17, 2019, the trial court signed a separate order, titled: "Order: Ignition Interlock Restriction."

[6] A copy of the June 6, 2019 Bond Condition Violation Report was admitted into evidence at the hearing on appellant's applications for writ of habeas corpus.

On August 19, 2019, the State filed a second Bond Condition Violation Report[7] stating that appellant had violated certain conditions of his release on bond by "using, possessing, or consuming a controlled substance, dangerous drug, marihuana, or alcohol," failing to pay fees for "drug and alcohol testing" and supervision, "driving a vehicle [that was] not equipped with an ignition interlock device," and "being charged with a new . . . felony offense." The second violation report noted that on August 18, 2019, appellant was arrested for a new felony offense of DWI, third offense,[8] and appellant had been driving a car that was "not equipped with [an] ignition interlock device."

The trial court ordered appellant's bond revoked, issued an alias capias for appellant's arrest, and set appellant's bail at $30,000. After appellant posted bond, he was released from custody. The trial court again placed appellant on pretrial community supervision and imposed amended conditions[9] on appellant's release on bond, including:

- Appellant shall "submit to electronic monitoring . . . to be installed within 3 calendar days of [his] release on bond. [Appellant] must sign any required agreements, comply with all required equipment and maintenance services, and comply with monitoring

---

[7]    A copy of the August 19, 2019 Bond Condition Violation Report was admitted into evidence at the hearing on appellant's applications for writ of habeas corpus.

[8]    *See* TEX. PENAL CODE ANN. §§ 49.04(a), 49.09(b)(2).

[9]    A copy of appellant's amended bond conditions related to the April 14, 2019 DWI felony offense was admitted into evidence at the hearing on appellant's applications for writ of habeas corpus.

protocols . . . . [Appellant] will observe an initial curfew from 6:00 PM until 6:00 AM, seven days per week."

- Appellant "will be supervised by" HCCSCD and "will pay to and through HCCSCD a supervision fee of $25.00 per month and a $2.00 transaction fee for each payment";

- Appellant "shall personally appear in court, on time, every time th[e] case is set on the Court[']s docket";

- Appellant "shall commit no crime and shall not engage in any conduct that could result in his[] arrest";

- Appellant "shall not operate a motor vehicle unless it is equipped with a camera-equipped, deep-lung breath analysis mechanism approved by the Texas Department of Public Safety that makes impractical the operation of a motor vehicle if ethyl alcohol is detected in his[] breath. . . . [Appellant] must comply with all required equipment and maintenance service, and . . . comply with testing protocols";

- Appellant shall "submit to DRUG AND ALCOHOL testing" and "pay [a] drug testing fee of $10.00 monthly";

- Appellant "must not use, possess, or consume alcohol"; and

- Appellant "must not use, possess, or consume marijuana or any controlled substance or dangerous drug unless obtained pursuant to a lawful prescription for [appellant] issued by a medical doctor. [Appellant] will provide a copy of all such prescriptions to his supervising officer in advance."

On May 13, 2020, after subsequent violations of his bond conditions and a motion filed by the State to revoke appellant's bond, the trial court revoked appellant's bond, ordered appellant "remanded to the custody of the sheriff," and set appellant's bail at $100,000 for the April 14, 2019 DWI felony offense. Appellant remains in custody for this offense.

6

***August 2019 DWI, Third Offense***

Appellant was arrested on August 18, 2019 for a second felony offense of DWI, third offense. A Harris County Grand Jury then issued a true bill of indictment, alleging that appellant, on or about August 18, 2019, "unlawfully[] operate[d] a motor vehicle in a public place while intoxicated." The indictment also alleged that previously, on December 14, 2015, appellant was convicted of the offense of DWI in the trial court cause number 2057262 in the County Criminal Court at Law No. 8 in Harris County, and on January 17, 2014, appellant was convicted of the offense of DWI in trial cause number 14T2814 in Cobb County State Court in Cobb County.[10]

The trial court set appellant's bail at $25,000. Appellant posted bond and was released from custody. The trial court placed appellant on pretrial community supervision and imposed conditions[11] on appellant's release on bond, including:

- Appellant "will be supervised by" HCCSCD;

- Appellant "shall commit no crime and shall not engage in any conduct that could result in his[] arrest";

- Appellant "shall not operate a motor vehicle unless it is equipped with a camera-equipped, deep-lung breath analysis mechanism approved by

---

[10] *See* TEX. PENAL CODE ANN. §§ 49.04(a), 49.09(b)(2); appellate court cause no. 01-20-00574-CR, trial court cause no. 1680892.

[11] A copy of appellant's bond conditions related to the August 18, 2019 DWI felony offense was admitted into evidence at the hearing on appellant's applications for writ of habeas corpus.

the Texas Department of Public Safety that makes impractical the operation of a motor vehicle if ethyl alcohol is detected in his[] breath. . . . [Appellant] must comply with all required equipment and maintenance service, and . . . comply with testing protocols";

- Appellant "must not use, possess, or consume alcohol";

- Appellant "must not use, possess, or consume marijuana or any controlled substance or dangerous drug unless obtained pursuant to a lawful prescription for [appellant] issued by a medical doctor. [Appellant] will provide a copy of all such prescriptions to his supervising officer in advance"; and

- Appellant shall "submit to electronic monitoring . . . to be installed within 3 calendar days of [his] release on bond. [Appellant] must sign any required agreements, comply with all required equipment and maintenance services, and comply with monitoring protocols . . . . [Appellant] will observe an initial curfew from 6:00 PM until 6:00 AM, seven days per week."

On November 7, 2019, the State filed a third Bond Condition Violation Report[12] stating that appellant had violated certain conditions of his release on bond by "failing to comply with [his] curfew requirements." The third violation report noted that appellant had violated his curfew on October 29, 2019. The trial court did not revoke appellant's bond and ordered that appellant's pretrial community supervision continue.

---

[12] A copy of the November 7, 2019 Bond Condition Violation Report was admitted into evidence at the hearing on appellant's applications for writ of habeas corpus.

8

On December 4, 2019, the State filed a fourth Bond Condition Violation Report[13] stating that appellant had violated certain conditions of his release on bond by violating the requirements of the ignition interlock device. The trial court ordered appellant's bond revoked and issued an alias capias for appellant's arrest. The trial court later reinstated appellant's bond, and appellant continued on pretrial community supervision.

On March 30, 2020, the State filed a fifth Bond Condition Violation Report[14] stating that appellant had violated certain conditions of his release on bond by "failing to comply with [his] curfew requirements" and "failing to comply with the rules of the electronic monitoring program." The fifth violation report noted that appellant had failed to properly charge his electronic monitoring device on multiple occasions and had violated his curfew on March 25, 2020. The trial court did not revoke appellant's bond and ordered that appellant's pretrial community supervision continue.

On April 29, 2020, the State filed a sixth Bond Condition Violation Report[15] stating that appellant had violated certain conditions of his release on bond by

---

[13] A copy of the December 4, 2019 Bond Condition Violation Report was admitted into evidence at the hearing on appellant's applications for writ of habeas corpus

[14] A copy of the March 30, 2020 Bond Condition Violation Report was admitted into evidence at the hearing on appellant's applications for writ of habeas corpus.

[15] A copy of the April 29, 2020 Bond Condition Violation Report was admitted into evidence at the hearing on appellant's applications for writ of habeas corpus.

"failing to comply with [his] curfew requirements," "failing to comply with the rules of the electronic monitoring program," "driving a vehicle [that was] not equipped with an ignition interlock device," and "being charged with a new . . . felony offense." The sixth violation report noted that appellant's electronic monitoring device shut down on April 28, 2020 and appellant did not service his ignition interlock device on April 23, 2020, as required, and "was lock[ed]out" of the device on April 26, 2020. Appellant had also violated his curfew on April 28, 2020, was arrested for a new felony offense of DWI, third offense on April 28, 2020,[16] and had driven a car that was "not equipped with the ignition interlock device" on April 28, 2020.

After the State's filing of the sixth Bond Condition Violation Report and a motion to revoke appellant's bond, the trial court ordered appellant's bond revoked, issued an alias capias for appellant's arrest, and set appellant's bail at $100,000 for the August 19, 2019 DWI felony offense. Appellant remains in custody for this offense.

### April 2020 DWI, Third Offense

On April 28, 2020, appellant was arrested for a third felony offense of DWI, third offense. On May 7, 2020, the Harris County Grand Jury issued a true bill of indictment, alleging that appellant, on or about April 28, 2020, "unlawfully[]

---

[16]   *See* TEX. PENAL CODE ANN. §§ 49.04(a), 49.09(b)(2).

operate[d] a motor vehicle in a public place while intoxicated." The indictment also alleged that previously, on December 14, 2015, appellant was convicted of the offense of DWI in the trial court cause number 2057262 in the County Criminal Court at Law No. 8 in Harris County, and on January 17, 2014, appellant was convicted of the offense of DWI in trial cause number 14T2814 in Cobb County State Court in Cobb County.[17] The trial court set appellant's bail at $100,000 for the April 28, 2020 DWI felony offense. Appellant remains in custody for this offense.

### Applications for Writ of Habeas Corpus

On June 28, 2020, appellant filed applications for writ of habeas corpus in his three trial court cases, asserting that his confinement and restraint were illegal because the trial court "ha[d] set bond at $100,000 in each [trial court] cause [number], totaling $300,000," the "bond amounts . . . required [were] excessive," appellant could not "afford to pay the current bonds," and appellant "ha[d] been detained since April 28, 2020 due to his inability to pay."[18] Appellant attached his unsworn declaration to his applications for writ of habeas corpus.

---

[17]    *See id.* §§ 49.04(a), 49.09(b)(2); appellate court cause no. 01-20-00573-CR, trial court cause no. 1680893.

[18]    *See* TEX. CODE CRIM. PROC. ANN. art. 17.15; *see also id.* art. 1.08 ("The writ of habeas corpus is a writ of right and shall never be suspended."); *Ex parte Weise*, 55 S.W.3d 617, 619 (Tex. Crim. App. 2001) (when faced with excessive bail, defendant has right to assert his constitutional right to reasonable bail through use of application for pretrial writ of habeas corpus).

11

*Hearing*

The trial court held a hearing on appellant's applications for writ of habeas corpus. At the hearing, HCCSCD Officer N. Broadway testified that appellant was first placed on pretrial community supervision on April 17, 2019 after he was released on bond related to the April 14, 2019 DWI felony offense. Broadway supervised appellant while he was on pretrial community supervision. Appellant was subject to certain bond conditions while on community supervision, and he failed to comply with those conditions.

As to the bond conditions that appellant violated, Officer Broadway testified that appellant was not allowed to consume alcohol or use narcotics while on pretrial community supervision, but he did not comply with those bond conditions because he was arrested for the felony offense of DWI, third offense, in August 2019. Appellant was also required to comply with a curfew from 6:00 p.m. and 6:00 a.m. while on pretrial community supervision. Appellant violated his curfew requirements on October 29, 2019, March 25, 2020, and April 28, 2020. Appellant was also required "to have an ignition interlock [device] installed on any vehicle [that] he drove," and he did not comply with that bond condition. Appellant also did not have his ignition interlock device serviced in April 2020, which then "locked" him out of the device on April 26, 2020. Still yet, although appellant was not to commit any "offense against the laws of th[e] [S]tate or any other state or the United

12

States" while on pretrial community supervision, appellant was arrested in August 2019 for the felony offense of DWI, third offense, and he was arrested again in April 2020 for another felony offense of DWI, third offense. In total, Broadway testified that appellant had violated his bond conditions on six occasions.[19]

Appellant's mother, Ella Ward, testified that appellant was thirty-years-old, a United States citizen, and had lived in Harris County most of his life. Ward had helped appellant pay for his bonds related to the April 14, 2019 DWI felony offense and the August 18, 2019 DWI felony offense. When Ward had originally helped appellant pay for his bonds, she was employed, but at the time of the hearing on appellant's habeas applications, she was no longer working. She could not afford to pay appellant's bail, which was set at $100,000 in each of appellant's three trial court cases. She also could not afford to pay "10 percent of [each] bond . . . to a bondsman" or $30,000. Ward did not "have any collateral to put up." At most, she could pay $250 towards appellant's bail. Ward did not know of any family members or friends that could help pay appellant's bail.

As to appellant, Ward testified that before appellant's latest arrest on April 28, 2020, he was employed while on pretrial community supervision. Appellant worked for a local union and "would go into the convention centers around Houston

---

[19] As previously noted, copies of the State's first, second, third, fourth, fifth, and sixth Bond Condition Violation Reports were admitted into evidence at the hearing on appellant's applications for writ of habeas corpus.

and . . . the hotels around Houston and set up . . . for conventions [and] for different events." Appellant also worked with his uncle at a landscaping company, which he did until his arrest on April 28, 2020. Even so, according to Ward, appellant did not have any money to pay for bail. Ward explained that appellant's "union job" had been affected by the COVID-19 pandemic[20] because "no conventions could go on in Houston and Harris County or around the area[]." When appellant could work at both of his jobs, he made about $2,500 a month, but when he was only able to work at the landscaping company, he made between $1,000 and $1,500 a month or less.

Ward also explained that before appellant's most recent arrest on April 28, 2020, appellant was taking online classes from the University of Phoenix while on pretrial community supervision. Ward had confirmed with the school that if appellant was released from custody, he could resume his online classes.

Ward testified that she was part of appellant's support system and appellant was very close to his grandmother. Appellant's grandmother had medical issues, and before appellant's April 28, 2020 arrest, appellant would check on his

---

[20] *See In re Landstar Ranger, Inc.*, No. 06-20-00047-CV, 2020 WL 5521136, at *4 (Tex. App.—Texarkana Sept. 15, 2020, orig. proceeding) (mem. op.) (noting "[a]s a result of the onset of the COVID-19 pandemic, on March 13, 2020, Texas Governor Greg Abbott issued a disaster proclamation certifying that COVID-19 posed an imminent threat of disaster for all counties in the state of Texas[, and] . . . Governor Abbott instituted health protocols, such as minimizing in-person contact, maintaining six feet between individuals, and suggesting that people wear masks when in the presence of other individuals").

grandmother daily. He would help his grandmother with yard work and bring her food. He was updating his grandmother's house to accommodate her disabilities.

As to appellant's mental health, Ward testified that appellant had obsessive-compulsive disorder and he "like[d] everything neat and clean and in order." Appellant also suffered from schizophrenia and had, in the past, "hear[d] voices." Appellant had also been treated for depression and bipolar disorder. Before his most recent arrest on April 28, 2020, appellant was seeing a mental health professional at Harris Health System for counseling. A recovery plan had been created for appellant to work on his depression, anxiety, and sobriety.[21] Ward stated that it was appellant's goal to become sober.

As to appellant's physical health, Ward testified that when appellant was in high school, his appendix burst, and he spent "two to three weeks [in the hospital] for . . . gangrene and . . . a stroke." Appellant also sustained "damage to [his] head" as the result of a car accident. Appellant had "bronchiolar problems" and was asthmatic. He had high blood pressure.

According to Ward, if appellant were to be released from custody and placed back on pretrial community supervision, appellant would live in his apartment and he could resume working for the local union and for the landscaping company. He

---

[21] A copy of the recovery plan was admitted into evidence at the hearing on appellant's applications for writ of habeas corpus.

would have the support of his family and the mental health professional at Harris Health System. Ward would help appellant seek out alcohol and substance-abuse treatment centers.

Reginald Faultry testified that appellant is his friend and his music manager. As to appellant's most recent arrest on April 28, 2020, Faultry explained that he spent most of the day on April 28, 2020 with appellant. On that day, appellant and Faultry went to rent a car, a white Chevrolet Camaro, for Faultry to use, but they used appellant's credit card to rent the car because Faultry did not have one. After renting the car, appellant and Faultry stopped by appellant's grandmother's house to visit her and then "went [to] the studio." They spent some time at the studio, but they also "ran some errands." When they left the studio, between 2:00 p.m. and 4:00 p.m., Faultry drove the rental car. Between the time that they left the studio, around 2:00 p.m. to 4:00 p.m., and 10:30 p.m. that night, Faultry and appellant were "just hanging out." Faultry had intended on driving appellant home in the rental car because of appellant's required curfew. But Faultry acknowledged that he was in the rental car with appellant after appellant's 6:00 p.m. curfew and that appellant violated his curfew requirements on April 28, 2020.

Faultry also testified that, at some point after he and appellant left the studio and while he was driving the rental car on April 28, 2020, the back tire on the passenger-side of the rental car—the tire on the back-right side of the car—had a

"blowout." Appellant was in the passenger seat of the car at the time. Faultry also ran the rental car into a guardrail. Faultry then took the car to a twenty-four-hour tire shop.[22] Faultry wanted to get the rental car's tire fixed and take appellant home. At the tire shop, Faultry got out of the rental car and asked an employee how much it would cost to fix the tire. Because neither Faultry nor appellant "ha[d] any cash" with them, Faultry walked to a nearby gas station to use the automated teller machine. While walking back to the tire shop, Faultry saw law enforcement officers and appellant being detained. Faultry turned around and left. He was later picked up by another friend, who took Faultry home.

As to certain items found in the rental car, Faultry testified that the beer bottle found in the rental car was his beer bottle. Faultry stated that he bought the bottle of beer on April 28, 2020 and he brought it along with him in the rental car. He did not drink it and forgot about it. Further, according to Faultry, the marijuana found under the driver's seat of the rental car belonged to him, and he had misplaced it.

Faultry also testified that he knew about appellant's ignition interlock device requirement and he did not allow appellant to drive the rental car. And Faultry did not see appellant drink alcohol or use illegal narcotics on April 28, 2020. But Faultry

---

[22]    During his testimony, Faultry indicated that he and appellant may have "stopped for . . . 10 minutes . . . [after the blowout to] try[] to cope with what just happened" before they drove to the tire shop. During that time, appellant told Faultry to "go to the tire shop."

17

explained that if appellant had told law enforcement officers that he had been driving the rental car, appellant must have driven the car during the day when he and appellant had "split." In other words, appellant "probably took off or something," "went to the store, grabbed something," in the rental car, and Faultry just did not know about it.

Finally, when asked at the hearing, "[w]ould it surprise you to hear that a witness saw [appellant] driving the vehicle with no one else inside," Faultry responded that he could have been mistaken for appellant, and appellant could have been "laid back in the passenger seat" of the rental car then because appellant was tired. And when asked whether he would be "surprise[d] . . . to hear that the witness saw [appellant] run into a guardrail with the [rental car]," Faultry stated that he was the person who had hit the guardrail with the rental car.

Houston Police Department ("HPD") Officer K. Bosworth testified that on April 28, 2020, she responded to a call "to take over the scene" at a tire shop after another law enforcement officer had responded to a "DWI . . . call from a civilian." Bosworth arrived at the scene at 10:51 p.m. She saw a white rental car parked outside the tire shop, with the driver's-side front-door open. Bosworth contacted appellant. Appellant had slurred speech and red, glassy eyes. He appeared disoriented and unresponsive and was unable to stay awake in the back seat of another law enforcement officer's patrol car. Bosworth could smell the odor of

alcohol on appellant's breath.[23]  After appellant was moved to the back seat of Bosworth's patrol car, he vomited inside the car.  Based on her training and experience as a law enforcement officer, Bosworth believed that appellant was intoxicated.[24]

Officer Bosworth further testified that there were no other persons at the tire shop on April 28, 2020 other than appellant, law enforcement officers, and the witness who had originally reported the possible DWI offense.  Appellant admitted to driving the rental car, but he did not admit to consuming alcohol or using narcotics before driving the car.  Appellant stated that he had driven the car from a gas station to the tire shop.  Appellant was the only person who admitted to driving the rental car that night.

Officer Bosworth also testified that inside the rental car, law enforcement officers found marijuana under the driver's seat and a bottle of beer in the back seat. The rental car was missing a tire on the back-left side of the car, and it was not equipped with an ignition interlock device.

---

[23]  Officer Bosworth stated that she smelled the odor of marijuana in the rental car that appellant had been driving, but she could not recall whether she smelled the odor of marijuana on appellant's person.

[24]  Officer Bosworth noted that appellant refused to engage in field sobriety tests.

### Trial Court's Ruling

After the hearing on appellant's applications for writ of habeas corpus, the trial court denied appellant's applications. Appellant then filed motions to reconsider the denial of his habeas applications, asserting that he needed to be released on personal bond or to have the amount of his bail reduced because "90 days had passed from the commencement of his detention" related to the April 28, 2020 DWI felony offense, "[t]he State [had] not announce[d] ready [for trial] within [the required] 90-day time limit," and "the State did not provide [appellant] with a toxicology report or blood discovery related to the blood evidence seized during [the April 28, 2020] arrest within the 90-day time limit."[25]

At the hearing on appellant's motions to reconsider, appellant clarified that he was seeking habeas relief under Texas Code of Criminal Procedure article 17.151 only as to the April 28, 2020 DWI felony offense.[26] He asserted that he was entitled to either be released on "personal bond" or to a "reduc[tion] [of] his bond" related to that offense. Following the hearing, the trial court denied appellant's motions to reconsider.

---

[25]     *See* TEX. CODE CRIM. PROC. ANN. art. 17.151.

[26]     *See id.*

20

**Excessive Bail**

In his first issue, appellant argues that the trial court erred in denying him habeas relief because appellant "ha[d] been in custody at the Harris County Jail since April 28, 2020," the bail amounts set by the trial court in his three trial court cases were excessive, "he [was] too poor to afford the $300,000 in b[ail] [set by] the trial court," "[t]he factors . . . d[id] not support setting [appellant's] bail so high," appellant "ha[d] appeared in court at every setting," and he was a "United States citizen and ha[d] lived in Harris County his entire life."

In a habeas proceeding for a claim of excessive bail, we review a trial court's decision about the amount of bail for an abuse of discretion. *Ex parte Rubac*, 611 S.W.2d 848, 850 (Tex. Crim. App. 1981); *Montalvo v. State*, 315 S.W.3d 588, 592 (Tex. App.—Houston [1st Dist.] 2010, no pet.). A trial court abuses its discretion if it acts without reference to any guiding rules or principles. *Ex parte Hunt*, 138 S.W.3d 503, 505 (Tex. App.—Fort Worth 2004, pet. ref'd). A reviewing court will not disturb a decision of the trial court if that decision is within the zone of reasonable disagreement. *Ex parte Tata*, 358 S.W.3d 392, 397 (Tex. App.—Houston [1st Dist.] 2011, pet. dism'd); *Clemons v. State*, 220 S.W.3d 176, 178 (Tex. App.—Eastland 2007, no pet.). We acknowledge that an abuse-of-discretion review requires more of the appellate court than simply deciding that the trial court did not rule arbitrarily or capriciously. *Montalvo*, 315 S.W.3d at 593. An appellate court

must instead measure the trial court's ruling against the relevant criteria by which the ruling was made. *Id.* It is not an abuse of discretion for the trial court merely to decide a matter within its discretion in a different manner than the appellate court would under similar circumstances. *Ex parte Miller*, 442 S.W.3d 478, 481 (Tex. App.—Dallas 2013, no pet.).

Before conviction, every citizen accused of a criminal offense has a "strong interest in liberty." *United States v. Salerno*, 481 U.S. 739, 750 (1987). Thus, the Eighth Amendment to the United States Constitution provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII; *see also Schilb v. Kuebel*, 404 U.S. 357, 365 (1971) (applying Eighth Amendment's prohibition of excessive bail to states). The Texas Constitution also guarantees that "[a]ll prisoners shall be bailable by sufficient sureties, unless for capital offenses, when the proof is evident." TEX. CONST. art. I, § 11; *see also* TEX. CONST. art. I, § 13 ("Excessive bail shall not be required . . . ."); TEX. CODE CRIM. PROC. ANN. art. 1.07 ("All prisoners shall be bailable unless for capital offenses when the proof is evident.").

A defendant's right to pretrial bail, however, may be subordinated to the greater needs of society. *Salerno*, 481 U.S. at 750–51; *see also Ex parte Beard*, 92 S.W.3d 566, 573 (Tex. App.—Austin 2002, pet. ref'd) (noting "a balance must be struck between the defendant's presumption of innocence and the State's interest").

In balancing the liberty interest of a defendant and the safety interest of society, the Texas Legislature has adopted rules and guidelines for determining when a defendant should obtain pretrial release through the posting of adequate bail. *See* TEX. CODE CRIM. PROC. ANN. art. 17.01 ("'Bail' is the security given by the accused that he will appear and answer before the proper court the accusation brought against him . . . ."); *Ex parte Jefferson*, No. 07-20-00123-CR, 2020 WL 4249743, at *2 (Tex. App.—Amarillo July 23, 2020, no pet.) (mem. op., not designated for publication). The primary purpose of pretrial bail is to secure a defendant's appearance at trial on the offenses with which he is charged. *See* TEX. CODE CRIM. PROC. ANN. art. 17.01; *Ex parte Rodriguez*, 595 S.W.2d 549, 550 (Tex. Crim. App. 1980); *Ex parte Vasquez*, 558 S.W.2d 477, 479 (Tex. Crim. App. [Panel Op.] 1977).

In exercising its discretion in setting the dollar amount of bail and any conditions of bail, a trial court must consider the following statutory factors:

1. Bail shall be sufficiently high to give reasonable assurance that a criminal defendant will appear at trial and comply with other court orders and conditions of the bond;

2. The power to require bail is not to be used as an instrument of oppression;

3. The nature of the offense and the circumstances of its commission;

4. The ability to make bail is to be regarded, and proof may be taken on this point; and

5. The future safety of a victim of the alleged offense and the community.

23

*See* TEX. CODE CRIM. PROC. ANN. art. 17.15; *see also Ludwig v. State*, 812 S.W.2d 323, 324 (Tex. Crim. App. 1991); *Golden v. State*, 288 S.W.3d 516, 518 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd). In determining an appropriate amount of bail, the trial court may also consider a defendant's work record, his family and community ties, his residency, his prior criminal record, his conformity with previous bond conditions, and the aggravating factors alleged to have been involved in the charged offenses. *See Ex parte Rubac*, 611 S.W.2d at 849–50; *Montalvo*, 315 S.W.3d at 593. The burden of proof is on the defendant who claims that his bail is excessive. *See Ex parte Rubac*, 611 S.W.2d at 849; *Montalvo*, 315 S.W.3d at 592.

The trial court has set appellant's bail at $100,000 for the April 14, 2019 DWI felony offense, $100,000 for the August 18, 2019 DWI felony offense, and $100,000 for the April 28, 2020 DWI felony offense. We review the factors used by the trial court to set the amounts of appellant's bail to determine whether bail is excessive.

## A. Sufficiency of Bail

The primary purpose of pretrial bail is to secure a defendant's appearance at trial on the offenses with which he is charged. *See* TEX. CODE CRIM. PROC. ANN. art. 17.01; *Ex parte Rodriguez*, 595 S.W.2d at 550; *Ex parte Vasquez*, 558 S.W.2d at 479. The State, in its brief, agrees with appellant's assertion that he does not have a "history of failing to appear before the trial court."

Even so, the trial court, in setting the amounts of appellant's bail, was entitled to consider appellant's history of violating his bond conditions. *See* TEX. CODE CRIM. PROC. ANN. art. 17.15(1); *Golden*, 288 S.W.3d at 518–19 (bail shall be sufficiently high to give reasonable assurance that criminal defendant will appear at trial and comply with other court orders and conditions of his bond).

Before his latest arrest on April 28, 2020, appellant spent about a year on pretrial community supervision. After appellant was arrested for the April 14, 2019 DWI felony offense, the trial court set his bail at $35,000. Appellant posted bond and was released from custody, and the trial court placed appellant on pretrial community supervision. The trial court also imposed conditions on appellant's release on bond. On April 17, 2019, appellant signed an "Order for Pretrial Supervision and Bond Conditions" related to the April 14, 2019 DWI felony offense, in which he affirmed that he "agree[d] to the[] [bond] conditions" and that he understood that the trial court was "ordering [his] compliance with the conditions . . . as a requirement of [his] . . . release on bond" and his "failure to comply with the[] [bond] conditions [could] result in the forfeiture or revocation of [his] bond and [his] confinement."

On June 6, 2019, less than two months after appellant agreed to the trial court's bond conditions, the State filed its first Bond Condition Violation Report stating that appellant had violated the conditions of his release on bond by "using,

25

possessing, or consuming a controlled substance, dangerous drug, marihuana, or alcohol" and failing to pay his required fees for "drug and alcohol testing" and supervision. The violation report specified that appellant consumed alcohol on April 26, 2019 and April 27, 2019.[27] The trial court ordered appellant's bond revoked based on the violations of his bond conditions and issued an alias capias for appellant's arrest. The trial court later reinstated appellant's bond, and appellant continued on pretrial community supervision.

On August 19, 2019, the State filed its second Bond Condition Violation Report stating that appellant had violated the conditions of his release on bond by "using, possessing, or consuming a controlled substance, dangerous drug, marihuana, or alcohol," failing to pay his required fees for "drug and alcohol testing" and supervision, "driving a vehicle [that was] not equipped with an ignition interlock device," and "being charged with a new . . . felony offense," i.e., the August 18, 2019 DWI felony offense.[28]

The trial court again revoked appellant's bond, issued an alias capias for appellant's arrest, and set appellant's bail at $30,000 for the April 14, 2019 DWI felony offense. After appellant posted bond, he was released from custody. The

---

[27] Appellant consumed alcohol within ten days of signing the "Order for Pretrial Supervision and Bond Conditions."

[28] Appellant was arrested for a second felony offense of DWI, third offense, about four months after signing the "Order for Pretrial Supervision and Bond Conditions." *See* TEX. PENAL CODE ANN. §§ 49.04(a), 49.09(b)(2).

26

trial court placed appellant back on pretrial community supervision related to the April 14, 2019 DWI felony offense and imposed amended conditions on appellant's release on bond. On August 23, 2019, appellant signed the "1st Amended Order for Pretrial Supervision and Bond Conditions," again affirming that he "agree[d] to the[] [bond] conditions" and that he understood that the trial court was "ordering [his] compliance with the conditions . . . as a requirement of [his] continued release on bond" and his "failure to comply with the[] [bond] conditions [could] result in the forfeiture or revocation of [his] bond and [his] confinement."

Related to appellant's August 18, 2019 DWI felony offense, the trial court set appellant's bail at $25,000. Appellant posted bond and was released from custody. The trial court placed appellant on pretrial community supervision and imposed conditions on appellant's release on bond. On August 23, 2019, appellant signed the "Order for Pretrial Supervision and Bond Conditions," in which he affirmed that he "agree[d] to the[] [bond] conditions" and that he understood that the trial court was "ordering [his] compliance with the conditions . . . as a requirement of [his] . . . release on bond" and his "failure to comply with the[] [bond] conditions [could] result in the forfeiture or revocation of [his] bond and [his] confinement."

On November 7, 2019, the State filed its third Bond Condition Violation Report stating that appellant had violated the conditions of his release on bond by "failing to comply with his curfew requirements" on October 29, 2019.[29]

On December 4, 2019, the State filed its fourth Bond Condition Violation Report stating that appellant had violated the conditions of his release on bond by not complying with the requirements of his ignition interlock device. The fourth violation report also noted that appellant may have consumed alcohol on October 17, 2019 and November 10, 2019, but his blood alcohol concentration readings on those days could not be confirmed because appellant had "fail[ed] to retest as required." The trial court ordered appellant's bond revoked based on the violations of his bond conditions and issued an alias capias for appellant's arrest. The trial court later reinstated appellant's bond, and appellant continued on pretrial community supervision.

On March 30, 2020, the State filed its fifth Bond Condition Violation Report stating that appellant had violated the conditions of his release on bond by "failing to comply with his curfew requirements" on March 25, 2020 and "failing to comply with the rules of the electronic monitoring program" because appellant did not properly charge his electronic monitoring device on multiple occasions.

---

[29] Appellant violated his curfew requirements only two months after agreeing to comply with them.

On April 29, 2020, the State filed its sixth Bond Condition Violation report stating that appellant had violated the conditions of his release on bond by (1) "failing to comply with his curfew requirements" on April 28, 2020, (2) "failing to comply with the rules of the electronic monitoring program" because appellant's electronic monitoring device shut down on April 28, 2020, (3) "driving a vehicle [that was] not equipped with an ignition interlock device," and (4) "being charged with a new . . . felony offense," i.e., the April 28, 2020 DWI felony offense.[30] The sixth violation report also noted that appellant did not service his ignition interlock device on April 23, 2020, as required, and he "was lock[ed] out" of the device on April 26, 2020.

Officer Broadway, who supervised appellant while he was on pretrial community supervision, testified at the hearing on appellant's applications for writ of habeas corpus. She stated that appellant's pretrial community supervision began on April 17, 2019 and appellant was subject to certain bond conditions while on pretrial community supervision. Broadway explained that appellant had failed to comply with his bond conditions because, while on community supervision, appellant had been arrested twice for the felony offense of DWI, third offense—on August 18, 2019 and April 28, 2020. Appellant also violated his bond conditions by

---

[30]   Appellant was arrested for a third felony offense of DWI, third offense about a year after his first arrest, and about eight months after his second arrest. *See* TEX. PENAL CODE ANN. §§ 49.04(a), 49.09(b)(2).

failing to adhere to his curfew requirements on October 29, 2019, March 25, 2020, and April 28, 2020. And appellant drove a car that was not equipped with an ignition interlock device while on community supervision, and he failed to have his ignition interlock device serviced in April 2020, which then "locked" him out of the device on April 26, 2020.

Appellant's extensive history of non-compliance with his bond conditions, which began within only ten days of him agreeing to comply with the trial court's bond conditions and continued throughout the year he was on pretrial community supervision, weighs against a determination that the bail amounts set by the trial court in appellant's three cases were excessive. *See, e.g.*, *Ex parte Davila*, Nos. 04-19-00276-CR to 04-19-00279-CR, 2019 WL 4280067, at *1–3 (Tex. App.—San Antonio Sept. 11, 2019, no pet.) (mem. op., not designated for publication) (considering defendant's history of non-compliance with his bond conditions in determining trial court did not err in setting bail amounts); *Ex parte Payten*, No. 02-13-00447-CR, 2013 WL 5968449, at *4 (Tex. App.—Fort Worth Nov. 7, 2013, no pet.) (mem. op., not designated for publication) (noting defendant's failure to comply with conditions of bond several times in past); *Ex parte Owens*, Nos. 05-96-01540-CR, 05-96-01541-CR, 1997 WL 145170, at *4 (Tex. App.—Dallas Apr. 1, 1997, no pet.) (not designated for publication) ("In light of the evidence that [defendant] did not comply with the conditions of his bonds and was charged with a

30

new felony offense while out on bond, we cannot conclude that the [bail amount set by the trial court was] excessive.").

## B. Nature and Circumstances of the Offenses

The trial court must consider the nature and surrounding circumstances of the charges against appellant in setting his bail amounts. *See* TEX. CODE CRIM. PROC. ANN. art. 17.15(3); *Golden*, 288 S.W.3d at 518; *see also Ex parte Trevor Royce Sells*, No. 02-20-00143-CR, 2020 WL 7639574, at *3 (Tex. App.—Fort Worth Dec. 23, 2020, no pet.) (mem. op., not designated for publication) (noting "bail is not set in a vacuum" and courts "must consider the nature and surrounding circumstances of the charges against" defendant); *Ex parte Nimnicht*, 467 S.W.3d 64, 67 (Tex. App.—San Antonio 2015, no pet.) ("When determining reasonable bail, a trial court shall give the most weight to the nature of the offense and the length of the possible sentence.").

Appellant is charged with three separate felony offenses of DWI, third offense. *See* TEX. PENAL CODE ANN. §§ 49.04(a), 49.09(b)(2). Each constitutes a third-degree felony offense. *See id.* § 49.09(b)(2). The indictments in appellant's three trial court cases alleged that appellant, on or about April 14, 2019, August 18, 2019, and April 28, 2020, "unlawfully[] operate[d] a motor vehicle in a public place while intoxicated." *See id.* § 49.04(a). Each indictment also alleged that appellant has twice previously been convicted of DWI offenses in 2014 and 2015. *See id.*

31

§ 49.09(b)(2). Based on this history, appellant's April 14, 2019 DWI felony offense constitutes the third time that he had been arrested for a DWI offense, his August 18, 2019 DWI felony offense constitutes the fourth time that he had been arrested for a DWI offense, and his April 28, 2020 DWI felony offense constitutes the fifth time that he had been arrested for a DWI offense. *See Ex parte Rincon*, Nos. 04-13-00715-CR to 04-13-00718-CR, 2014 WL 2443870, at *3 (Tex. App.—San Antonio May 28, 2014, no pet.) (mem. op., not designated for publication) (in considering nature and circumstances of offense—which involved car-collision due to defendant's intoxication—noting defendant had "history of drunk driving" and prior convictions for DWI offenses). DWI offenses constitute serious and dangerous offenses. *See Lewis v. State*, No. 09-15-00140-CR, 2015 WL 6745159, at *5 (Tex. App.—Beaumont Nov. 4, 2015, no pet.) (mem. op., not designated for publication) (felony offense of DWI constitutes dangerous offense that places life of defendant and lives of others in jeopardy); *Davidson v. State*, No. 03-13-00708-CR, 2014 WL 3809813, at *1 (Tex. App.—Austin Aug. 1, 2014, no pet.) (mem. op., not designated for publication); *Perez v. State*, 897 S.W.2d 893, 898 (Tex. App.—San Antonio 1995, no pet.) (felony offense of DWI "has the potential of resulting in serious consequences"); *Vento v. State*, 724 S.W.2d 948, 951 (Tex. App.—Amarillo 1987, no pet.).

Further, appellant's three separate felony offenses of DWI, third offense, with which he is currently charged, occurred over the course of just twelve months. And appellant committed the August 18, 2019 DWI felony offense and the April 28, 2020 DWI felony offense while he was on pretrial community supervision after the trial court had set appellant's bail at amounts less than $100,000.[31] *See Ex parte Miller*, 442 S.W.3d at 482–83 (holding trial court's setting of bail at $200,000 on one charge and $50,000 on other was reasonable when defendant "was already on bond for a pending third-degree felony offense at the time he was charged with the[] new [third-degree] felony offenses").

As to the April 28, 2020 DWI felony offense, Officer Bosworth testified that she when arrived at the scene at the tire shop at 10:51 p.m., she saw a white rental car parked outside the tire shop with its driver's-side front-door open. Appellant, at the time, had slurred speech and red, glassy eyes. He appeared disoriented and unresponsive and was unable to stay awake in the back seat of another law enforcement officer's patrol car. Bosworth could smell the odor of alcohol on

---

[31] Initially, for the April 14, 2019 DWI felony offense, the trial court set appellant's bail at $35,000 and appellant posted bond. When the trial court ordered appellant's bond revoked and issued an alias capias for appellant's arrest because of violations of his bond conditions, the trial court set appellant's bail at $30,000 for the April 14, 2019 DWI felony offense. Appellant posted bond and was placed back on pretrial community supervision.

As to the August 18, 2019 DWI felony offense, the trial court set appellant's bail at $25,000. Appellant posted bond and was placed on pretrial community supervision. Appellant then committed the April 28, 2020 DWI felony offense.

33

appellant's breath. After appellant was placed in Bosworth's patrol car, he vomited in the car. Based on her training and experience as a law enforcement officer, Bosworth believed that appellant was intoxicated. Appellant admitted to driving the rental car on April 28, 2020.

According to Officer Bosworth, law enforcement officers found marijuana under the driver's seat of the rental car and a bottle of beer in the back seat. The car was also missing a tire on the back-left side. The car was not equipped with an ignition interlock device.[32] Bosworth smelled the odor of marijuana in the rental car that appellant had been driving.

The gravity of the allegations against appellant for the three third-degree felony offenses with which he is charged weighs against a determination that the bail amounts set by the trial court in appellant's three cases were excessive. *See Ex parte Trevor Royce Sells*, 2020 WL 7639574, at *3.

"[W]hen considering the nature of the offense[s] [charged] in setting [a defendant's] bail" amounts, the trial court may also consider "the punishment permitted by law" for the offenses with which the defendant is charged. *See Ex parte Vasquez*, 558 S.W.2d at 480; *see also Ex parte Ivey*, 594 S.W.2d 98, 99 (Tex. Crim.

---

[32] The second Bond Condition Violation Report, which concerns, among other things, the August 18, 2019 DWI felony offense, states that appellant was driving a car that was not equipped with an ignition interlock device when he was arrested for that DWI felony offense.

App. [Panel Op.] 1980); *Ex parte Nimnicht*, 467 S.W.3d at 67 ("When determining reasonable bail, a trial court shall give the most weight to the nature of the offense and the length of the possible sentence."). As noted, appellant is charged with three third-degree felony offenses. *See* TEX. PENAL CODE ANN. §§ 49.04(a), 49.09(b)(2). Each third-degree felony offense has a range of punishment of confinement for two to ten years and a fine not to exceed $10,000. *See id.* § 12.34 ("Third Degree Felony Punishment"). If appellant is found guilty of more than one felony offense of DWI, third offense, the trial court has the discretion to order appellant's sentences to run consecutively. *See* TEX. CODE CRIM. PROC. ANN. art. 42.08(a) (trial court vested with discretion to order two or more sentences to run either concurrently or consecutively); *Beedy v. State*, 250 S.W.3d 107, 110 (Tex. Crim. App. 2008); *see also DeLeon v. State*, 294 S.W.3d 742, 745 (Tex. App.—Amarillo 2009, pet. ref'd) ("Generally, a defendant has no right to serve sentences imposed for different offenses concurrently . . . ."). In other words, if appellant is found guilty of all three felony offenses of DWI, third offense, and his punishment is assessed at confinement for ten years for each offense, then he could ultimately face confinement for thirty years if the trial court orders his sentences to run consecutively. *See O'Brien v. State*, No. 02-12-00176-CR, 2012 WL 2922545, at *5 (Tex. App.—Houston [1st Dist.] July 5, 2012, no pet.) (mem. op., not designated for publication) (possibility of substantial sentence supported setting of high bail amount).

The potential sentences appellant faces related to the three third-degree felony offenses with which he is charged weigh against a determination that the bail amounts set by the trial court in appellant's three cases were excessive. *See Ex parte Williams*, Nos. 12-18-00174-CR, 12-18-00175-CR, 2018 WL 5961309 at *2 (Tex. App.—Tyler Nov. 14, 2018, no pet.) (mem. op., not designated for publication) ("The . . . severe punishment ranges to which [defendant] may be subjected weigh[] in favor of the trial court's decision [to deny defendant's habeas application and] not to reduce the amount of his bonds."); *Ex parte Rincon*, 2014 WL 2443870, at *3; *see, e.g.*, *Ex parte Trevor Royce Sells*, 2020 WL 7639574, at *3 (noting, where defendant faced up to ten years' confinement for one of his charged offenses, his potential sentence weighed in favor of affirming trial court's bail amount); *Ex parte Nimnicht*, 467 S.W.3d at 67–68 (considering defendant's potential sentence of confinement between two and ten years and fine of up to $10,000 to be "a significant potential sentence" that weighed against bail reduction).

## C.    Future Safety of the Community

The trial court must also consider the future safety of the community in setting appellant's bail amounts. *See* TEX. CODE CRIM. PROC. ANN. art. 17.15(5); *Golden*, 288 S.W.3d at 518. As noted above, appellant has twice previously been convicted of DWI offenses—in 2014 and 2015. On April 15, 2019, appellant was arrested for the felony offense of DWI, third offense, allegedly committed on April 14, 2019.

While on pretrial community supervision after posting bond related to his April 14, 2019 DWI felony offense, appellant was arrested on August 18, 2019 for another felony offense of DWI, third offense. After again posting bonds related to both his April 14, 2019 DWI felony offense and his August 18, 2019 DWI felony offense, appellant was placed on pretrial community supervision and given additional and more restrictive bond conditions. Yet, on April 28, 2020, appellant was arrested for another felony offense of DWI, third offense. *See Ex parte Owens*, 1997 WL 145170, at *4 (based on allegations that defendant committed new felony offense "while out on bond," trial court could have concluded that defendant posed threat to community).

Appellant's criminal history shows that on at least five different occasions he has been arrested for DWI offenses, and related to his three most recent arrests—all of which occurred over the course of just twelve months, from April 2019 to April 2020—appellant has been charged with three separate third-degree felony offenses. *See Ex parte Williams*, 2018 WL 5961309, at *1–3 (trial court could have reasonably concluded defendant posed danger to community because defendant had two prior convictions for DWI offenses, intoxication was a factor in causing car-collision that gave rise to current charges at issue, and defendant had "[a] history of drink driving"); *Ex parte Rincon*, 2014 WL 2443870, at *3 (trial court could have reasonably concluded defendant "posed a danger to the community based on his

history of drunk driving and considered that a compelling factor in setting his bail"); *see also Lewis*, 2015 WL 6745159, at *5 (felony offense of DWI constitutes dangerous offense that places life of defendant and lives of others in jeopardy); *Davidson*, 2014 WL 3809813, at *1; *Perez*, 897 S.W.2d at 898 (felony offense of DWI "has the potential of resulting in serious consequences"); *Vento*, 724 S.W.2d at 951.

Related to appellant's latest arrest on April 28, 2020, Officer Bosworth testified that when she encountered appellant around 10:51 p.m. at the tire shop on April 28, 2020, he was disoriented and unresponsive and unable to stay awake in the back seat of another law enforcement officer's patrol car. Appellant had an odor of alcohol on his breath, and he vomited in the back seat of Bosworth's patrol car. Appellant admitted to driving the rental car parked at the tire shop. The rental car smelled of marijuana, contained a bottle of beer and marijuana, and was missing a tire. It also lacked an ignition interlock device which would have prevented appellant from driving the car if appellant was intoxicated.

Here, the trial court could have reasonably found that appellant posed a danger to the community given his history of driving while intoxicated, and the potential danger that appellant posed to the community weighs against a determination that the bail amounts set by the trial court in appellant's three cases were excessive. *See*

*Salero*, 481 U.S. at 750–51 (defendant's right to pretrial bail may be subordinated to greater needs of society); *Ex parte Williams*, 2018 WL 5961309, at *1–3.

**D.     Ability to Make Bail**

Although the ability or inability to make bail does not control the amounts of bail set, it is a factor that the trial court must consider in setting a defendant's bail amounts.  *See* TEX. CODE CRIM. PROC. ANN. art. 17.15(4); *Ex parte Rodriguez*, 595 S.W.2d at 550; *Golden*, 288 S.W.3d at 518–20.  That said, a defendant's inability to pay the bail amounts set by the trial court does not automatically render the amounts excessive.  *See Ex parte Vance*, 608 S.W.2d 681, 683 (Tex. Crim. App. 1980); *Ex parte Scott*, 122 S.W.3d 866, 870 (Tex. App.—Fort Worth 2003, no pet.).  If the defendant's ability to make bail controlled the amount that the defendant paid, then the trial court's role in setting the bail amounts would be eliminated and the defendant would be in the position to determine the amounts of bail.  *Milner v. State*, 263 S.W.3d 146, 150 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

At the hearing on appellant's applications for writ of habeas corpus, appellant's mother, Ward, testified that she had helped appellant pay for his bonds related to the April 14, 2019 DWI felony offense and the August 18, 2019 DWI felony offense.  When Ward had originally helped appellant pay for his bonds, she was employed, but at the time of the hearing on appellant's habeas applications, she was no longer working.  She stated that she could not afford to pay appellant's bail,

which was set at $100,000 for each of appellant's three trial court cases. She also could not afford to pay "10 percent of [each] bond . . . to a bondsman," i.e., $30,000, to have appellant released from custody. Ward did not "have any collateral to put up." At most, she could pay $250, and she did not know of any family members or friends that could help pay appellant's bail.

Related to appellant, Ward testified that while on pretrial community supervision and before his latest arrest on April 28, 2020, appellant had been employed by a local union. Appellant "would go into the convention centers around Houston and . . . the hotels around Houston and set . . . up . . . for conventions [and] for different events." Appellant also worked for a landscaping company. Appellant's "union job" had been affected by the COVID-19 pandemic because "no conventions could go on in Houston and Harris County or around the area[]." When appellant could work both jobs, he made about $2,500 a month, but when he was only able to work at the landscaping company, he made between $1,000 and $1,500 a month or less. *See, e.g.*, *Lawhon v. State*, Nos. 03-15-00265-CR, 03-15-00277-CR, 03-15-00288-CR, 2015 WL 7424763, at *3 (Tex. 2App.—Austin Nov. 20, 2015, no pet.) (mem. op., not designated for publication) (noting defendant's mother's testimony that defendant was employed before being arrested provided some evidence that defendant "had at least some income").

In an unsworn declaration that appellant attached to his applications for writ of habeas corpus, appellant stated that before he was arrested on April 28, 2020, he worked for a labor union and a lawn service. His "[w]ork was not always consistent, but [he] could make up to $2,500 per month." He lived in a one-bedroom apartment and paid $854 for rent, $150 for utilities, and $328 for "court-ordered monitoring (interlock and GPS)" each month. Appellant stated that he could not afford to pay the bail amounts set by the trial court, he could not "afford to pay a bondsman to be released," he did not "know anyone [he] could borrow . . . money from," and he did not "know anyone who ha[d] enough money to help [him] make the current bail."

Neither Ward nor appellant provided evidence about appellant's specific assets or financial resources, nor did either of them explain what efforts, if any, were made by appellant to furnish bail in the amounts set by the trial court. *See Ex parte Goodson*, No. 01-15-00288-CR, 2015 WL 1868771, at *4 (Tex. App.—Houston [1st Dist.] Apr. 21, 2015, no pet.) (mem. op., not designated for publication) (defendant did not present any documentary evidence of his assets or financial resources and because of "the dearth of evidence presented by [defendant] regarding his finances," trial court could have concluded that bail amount was reasonable); *Milner*, 263 S.W.3d at 149 (to show his inability to make bail, defendant generally must establish that his funds have been exhausted); *Ex parte Scott*, 122 S.W. 3d at 870 (defendant did not detail his or his family's specific assets or financial resources); *Ex parte*

41

*Miller*, 631 S.W.2d 825, 827 (Tex. App.—Fort Worth 1982, pet. ref'd) ("[I]t [i]s incumbent on the accused . . . to show that he . . . made an effort to furnish bail in the amount set."). General references to appellant's inability to make bail do not render the bail amounts set by the trial court excessive or justify a reduction of the bail amounts. *See Balawajder v. State*, 759 S.W.2d 504, 506 (Tex. App.—Fort Worth 1988, pet. ref'd).

Further, even if appellant is unable pay the bail amounts set by the trial court in his three trial court cases, this does not by itself render the bail amounts excessive, and given the lack of detail in the evidence presented about appellant's claimed inability to make bail, the trial court could have concluded that the amounts of bail set by it were reasonable. *See Awadalla v. State*, No. 02-18-00513-CR, 2019 WL 984860, at *4 (Tex. App.—Fort Worth Feb. 28, 2019, pet. ref'd) (mem. op., not designated for publication) ("Although worth considering, inability to make bail does not control over the other factors."); *Ex parte Martinez*, No. 10-17-00420-CR, 2018 WL 1958016, at *3 (Tex. App.—Waco Apr. 25, 2018, no pet.) (mem. op., not designated for publication) ("In the absence of . . . evidence from [defendant] regarding his finances or assets, the trial court could reasonably have concluded that [defendant] had failed to carry his burden to prove that the bail set was excessive."); *Ex parte Castillo-Lorente*, 420 S.W.3d 884, 889 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *see also Ex parte Scott*, 122 S.W.3d at 870–71 (affirming trial court's

42

denial of habeas application and citing, as factor, absence of evidence on defendant's ability to make bond when defendant's evidence consisted of his testimony that he and his family lacked sufficient assets or financial resources to post bond, but he did not detail either his or his family's specific assets and financial resources nor his efforts to furnish bond). The lack of evidence about appellant's purported inability to make bail weighs against a determination that the bail amounts set by the trial court in appellant's three cases were excessive.

## E.      Whether Bail is Being Used as an Instrument of Oppression

Bail needs to be sufficiently high to give reasonable assurance that a defendant will appear at trial for the offenses charged. *See Ex parte Dupuy*, 498 S.W.3d 220, 232 (Tex. App.—Houston [14th Dist.] 2016, no pet.). Yet, when bail is set so high that a person cannot realistically pay for it, the trial court essentially "displaces the presumption of innocence and replaces it with a guaranteed trial appearance." *Id.* at 233 (internal quotations omitted). Bail may not be used as an instrument of oppression. *See Ex parte Guerra*, 383 S.W.3d 229, 233–34 (Tex. App.—San Antonio 2012, no pet.); *see also* TEX. CODE CRIM. PROC. ANN. art. 17.15(2). Bail set in a particular amount becomes oppressive when it assumes that the defendant cannot afford bail in that amount and when it is set for the express purpose of forcing the defendant to remain incarcerated. *See Ex parte Nimnicht*, 467 S.W.3d at 70; *Ex parte Durst*, 148 S.W.3d 496, 499 (Tex. App.—Houston [14th Dist.] 2004, no pet.)

(where bail amount set "solely to prevent [defendant] from getting out of jail," "bail [was] being used as an instrument of oppression"). Here, there is no evidence that the trial court set appellant's bail amounts at $100,000 to keep appellant incarcerated. *See Ex parte Dupuy*, 498 S.W.3d at 233; *Ex parte Nimnicht*, 467 S.W.3d at 70; *cf. Ex parte Harris*, 733 S.W.2d 712, 714 (Tex. App.—Austin 1987, no pet.) (trial court stated, "I'd rather see him in jail than to see someone's life taken").

Further, a trial court may increase the amount of bail for an offense when the defendant commits a new offense while on bond. *Miller v. State*, 855 S.W.2d 92, 93–94 (Tex. App.—Houston [14th Dist.] 1993, pet. ref'd); *see also Ex parte Ochoa*, Nos. 01-04-00238-CR to 01-05-00240-CR, 2004 WL 1470999, at *3 (Tex. App.—Houston [1st Dist.] July 1, 2004, pet. ref'd) (mem. op., not designated for publication). At first, the trial court set appellant's bail for the April 14, 2019 DWI felony offense at $35,000. Appellant posted bond, was released from custody, and was placed on pretrial community supervision. When appellant committed the August 18, 2019 DWI felony offense while on pretrial community supervision, the trial court ordered appellant's bond revoked, issued an alias capias for appellant's arrest, and set appellant's bail at $30,000 for the April 14, 2019 DWI felony offense. Appellant again posted bond, was released from custody, and was placed on pretrial community supervision related to the April 14, 2019 DWI felony offense.

As to the August 18, 2019 DWI felony offense, the trial court originally set appellant's bail at $25,000. Appellant posted bond, was released from custody, and was placed on pretrial community supervision. Appellant was then arrested for the April 28, 2020 DWI felony offense. It was only after appellant's third arrest for the felony offense of DWI, third offense—two of which occurred while appellant was on pretrial community supervision—that the trial court set appellant's bail at $100,000 for the April 14, 2019 DWI felony offense, $100,000 for the August 18, 2019 DWI felony offense, and $100,000 for the April 28, 2020 DWI felony offense. *See Miller*, 855 S.W.2d at 93–94 ("It is within the trial court's discretion to increase the bail set.").

We note that the bail amounts set by the trial court are akin to other cases involving a defendant charged with multiple felony offenses or a defendant charged with a third-degree felony offense. *See Ex parte Dupuy*, 498 S.W.3d at 233 (review of bail set in other cases may be instructive); *see, e.g.*, *Ex parte Miller*, 442 S.W.3d at 482–83 (trial court did not err in setting bail amounts at $200,000 and $50,000 for third-degree felony offenses); *Ex parte Shields*, No. 10-09-00422-CR, 2010 WL 1509340, at *1–3 (Tex. App.—Waco Apr. 14, 2010, no pet.) (mem. op., not designated for publication) (defendant charged with three third-degree felonies and bail set at $300,000 or $100,000 for each third-degree felony offense charged); *Ex parte Durst*, 148 S.W.3d at 499 (bail within range of $25,000 to $100,000 not

45

excessive for third-degree felony offense); *Ex parte Lopes*, No. 05-04-00216-CR, 2004 WL 878295, at *4 (Tex. App.—Dallas Apr. 26, 2004, pet. ref'd) (not designated for publication) ("We cannot conclude the $100,000 bond [for a third-degree felony offense] was an instrument of oppression.").

The lack of evidence showing that the trial court used bail as an instrument of oppression weighs against a determination that the bail amounts set by the trial court in appellant's three cases were excessive. *See Montalvo*, 315 S.W.3d at 596 ("[T]he habeas corpus record . . . does not suggest that the trial court deliberately set bail at an excessively high level solely to prevent [defendant] from posting bail.").

## F.    Other Factors

Along with considering the factors set out in Texas Code of Criminal Procedure article 17.15, the trial court, when setting the bail amounts, can also consider a defendant's work record, his family and community ties, his residency, his prior criminal record, his conformity with previous bond conditions, and the aggravating factors alleged to have been involved in the charged offenses. *See Ex parte Rubac*, 611 S.W.2d at 849–50; *Montalvo*, 315 S.W.3d at 593. We have already discussed appellant's criminal record, the nature and circumstances of the three third-degree felony offenses with which he is charged, and his extensive history of failing to adhere to the bond conditions imposed by the trial court. Thus, we turn to

46

the remaining factors that the trial court could have considered in setting the bail amounts in appellant's three cases.

A defendant's ties to the community in which he lives can be an assurance that he will appear at trial for the offenses charged. *See Ex parte Nimnicht*, 467 S.W.3d at 68 (noting court's review of defendant's ties to community includes assessment of defendant's residency history, family ties to community, and work history). Appellant's mother, Ward, testified at the hearing on appellant's applications for writ of habeas corpus that appellant was thirty-years-old, a United States citizen, and had lived in Harris County for most of his life. Before his latest arrest for the April 28, 2020 DWI felony offense, appellant had been employed by a local union and by a landscaping company. But appellant's "union job" had been affected by the COVID-19 pandemic. Yet appellant was still able to work at the landscaping company prior to his arrest.[33] Appellant was also taking online classes from the University of Phoenix, which Ward stated he could resume if he was released from custody. Appellant could also resume working for the local union and the landscaping company if he was released from custody.

Ward testified that she and appellant's grandmother were appellant's support system. Before he was arrested on April 28, 2020, appellant would check on his

---

[33] In his unsworn declaration attached to his applications for writ of habeas corpus, appellant stated that before his arrest on April 28, 2020, he worked for a labor union and a lawn service. His work, however, was "not always consistent."

grandmother daily. He would help his grandmother with yard work and bring her food. He was also updating his grandmother's house to accommodate her disabilities.

Finally, Ward noted that appellant was seeing a mental health professional at Harris Health System for counseling before his arrest on April 28, 2020, and a recovery plan had been created for appellant to work on his depression, anxiety, and sobriety.[34] According to Ward, appellant would have the support of his family and the mental health professional at Harris Health System if he was released from custody.

Although appellant presented some evidence of his ties to the Houston community, the trial court, as the fact finder, was in the best position to judge a witness's credibility, and it was free to doubt Ward's testimony and any of appellant's statements in his unsworn declaration. *See Powell v. State*, 479 S.W.2d 685, 687 (Tex. Crim. App. 1972); *see also Ex parte Trevor Royce Sells*, 2020 WL 7639574, at *4. And the other relevant factors, including appellant's prior criminal record, his inability to conform to previous bond conditions, and any aggravating factors alleged to have been involved in the charged offenses, weigh against a determination that the bail amounts set by the trial court in appellant's three cases

---

[34] A copy of the recovery plan was admitted into evidence at the hearing on appellant's applications for writ of habeas corpus.

48

were excessive. *See Ex parte Davila*, 2019 WL 4280067, at *2–3 (evidence of defendant's inability to afford bail and his family ties to community were not enough to establish bail amount set by trial court was excessive).

Appellant had the burden to show that the bail amounts set by the trial court in his three cases were excessive. *See Ex parte Rubac*, 611 S.W.2d at 849; *Montalvo*, 315 S.W.3d at 592. Given the balance of all the relevant factors discussed above,[35] we cannot conclude that the trial court erred by setting appellant's bail at $100,000 for the April 14, 2019 DWI felony offense, $100,000 for the August 18, 2019 DWI felony offense, and $100,000 for the April 28, 2020 DWI felony offense. We hold that the trial court did not err in denying appellant's applications for writ of habeas corpus.

We overrule appellant's first issue.

### Delay

In his second issue, appellant argues that the trial court erred in denying him habeas relief related to the April 28, 2020 DWI felony offense because he is entitled, under Texas Code of Criminal Procedure article 17.151, either to be released on "personal bond" or to a "reduc[tion] [of] his bond" as the State "was not ready for trial within 90 days from the commencement of his detention" on April 28, 2020.

---

[35] *See* TEX. CODE CRIM. PROC. ANN. art. 17.15; *Ex parte Rubac*, 611 S.W.2d 848, 849–50 (Tex. Crim. App. 1981); *Montalvo v. State*, 315 S.W.3d 588, 593 (Tex. App.—Houston [1st Dist.] 2010, no pet.).

*See* TEX. CODE CRIM. PROC. ANN. art. 17.151. Appellant also argues that because the State "failed to provide [him] with video[taped] recordings or toxicology results and discovery," it could not "in good faith claim [that] it was ready for trial within the [mandatory] 90[-]day time period."[36]

We review a trial court's decision to deny habeas relief on a claim that the State violated Texas Code of Criminal Procedure article 17.151 for an abuse of discretion. *Ex parte Craft*, 301 S.W.3d 447, 448–49 (Tex. App.—Fort Worth 2009, no pet.); *see also Ex parte Gill*, 413 S.W.3d 425, 431 (Tex. Crim. App. 2013). "In reviewing the trial court's decision, we view the evidence in the light most favorable to the ruling," and in the absent any abuse of discretion, we will uphold the ruling. *Ex parte Craft*, 301 S.W.3d at 448–49; *see also Ex parte Wheeler*, 203 S.W.3d 317, 324 (Tex. Crim. App. 2006); *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006). The burden is on the defendant to prove the facts entitling him to habeas relief. *Ex parte Kimes*, 872 S.W.2d 700, 703 (Tex. Crim. App. 1993).

Texas Code of Criminal Procedure article 17.151 states:

A defendant who is detained in jail pending trial of an accusation against him must be released either on personal bond or by reducing the amount of bail required, if the [S]tate is not ready for trial of the criminal action for which he is being detained within . . . 90 days from the commencement of his detention if he is accused of a felony . . . .

---

[36] The arguments raised by appellant in his second issue concern only the trial court's denial of habeas relief related to the April 28, 2020 DWI felony offense. *See* TEX. CODE CRIM. PROC. ANN. art. 17.151.

TEX. CODE CRIM. PROC. ANN. art. 17.151, § 1(1). "Article 17.151 contains distinctive language *mandating* that a defendant shall be released upon two conditions," which are (1) "the State's unreadiness for trial on the criminal action for which [the defendant] is being held" and (2) "that the [defendant] has been detained pending trial for ninety days, if accused of a felony." *Ex parte Gill*, 413 S.W.3d at 430 (emphasis added); *see also Pharris v. State*, 196 S.W.3d 369, 373 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (stating article 17.151 "is mandatory"). Put another way, if the State is not ready for trial within ninety days after the commencement of a defendant's detention for a felony offense, the trial court has only two options: release the defendant on personal bond or reduce the amount of bail required. *See Pharris*, 196 S.W.3d at 373; *see also* TEX. CODE CRIM. PROC. ANN. art. 17.151, § 1(1). Moreover, the trial court "must reduce bail to an amount that the record reflects [the defendant] can make in order to effectuate release." *Pharris*, 196 S.W.3d at 373–74 (emphasis and internal quotations omitted); *see also Rowe v. State*, 853 S.W.2d 581, 581 n.1 (Tex. Crim. App. 1993).

The State has the initial burden under article 17.151 to make a prima facie showing that it was ready for trial within the applicable time. *Jones v. State*, 803 S.W.2d 712, 717 (Tex. Crim. App. 1991); *Ex parte Ragston*, 422 S.W.3d 904, 906–07 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *Ex parte Brosky*, 863 S.W.2d 775, 778 (Tex. App.—Fort Worth 1993, no pet.). The State may make that showing

51

by either announcing ready within the allotted time, or by announcing, retrospectively, that it had been ready within the allotted time. *Ex parte Ragston*, 422 S.W.3d at 907; *Ex parte Brosky*, 863 S.W.2d at 778. Once the State makes its prima facie showing, the burden shifts to the defendant to rebut it. *Ex parte Brosky*, 863 S.W.2d at 778. Absent a sufficient rebuttal, the trial court has the discretion to find that the State was timely ready for trial. *Id.*

The question of the State's "readiness" within the statutory time limit refers to the State's preparedness for trial and not whether trial could have actually begun at that time. *See Behrend v. State*, 729 S.W.2d 717, 720 (Tex. Crim. App. 1987); *Ex parte Ragston*, 422 S.W.3d at 907; *Ex parte Brosky*, 863 S.W.2d at 778. Even so, there is no bright line rule on how much or what type of evidence the State must have available to be prepared for trial. *See Behrend*, 729 S.W.2d at 720; *Ex parte Brosky*, 863 S.W.2d at 779. The "existence of a charging instrument is an element State's preparedness." *Kernahan v. State*, 657 S.W.2d 433, 434 (Tex. Crim. App. 1983); *see also McClellan v. State*, 701 S.W.2d 671, 675 (Tex. App.—Austin 1985), *aff'd*, 742 S.W.2d 655 (Tex. Crim. App. 1987).

Appellant, in his motion to reconsider the denial of his habeas application related to the April 28, 2020 DWI felony offense, argued that he was entitled, under Texas Code of Criminal Procedure article 17.151, either to be released on "personal bond" or to a "reduc[tion] [of] his bond" because the State "was not ready for trial

52

within 90 days from the commencement of his detention" on April 28, 2020. *See* TEX. CODE CRIM. PROC. ANN. art. 17.151.

Appellant was arrested for the felony offense of DWI, third offense, on April 28, 2020. On May 7, 2020, a Harris County Grand Jury issued a true bill of indictment, alleging that appellant, on or about April 28, 2020, "unlawfully[] operate[d] a motor vehicle in a public place while intoxicated." The indictment also alleged that previously, on December 14, 2015, appellant was convicted of the offense of DWI in the trial court cause number 2057262 in the County Criminal Court at Law No. 8 in Harris County, and on January 17, 2014, appellant was convicted of the offense of DWI in trial cause number 14T2814 in Cobb County State Court in Cobb County. Appellant was indicted for the April 28, 2020 DWI felony offense nine days after appellant's arrest for the offense. The indictment reflects "an element of [State's] preparedness" in the case during the relevant statutory time period. *Cf. Ex parte Jackson*, No. 03-18-00494-CR, 2019 WL 1782037, at *3 (Tex. App.—Austin Apr. 24, 2019, no pet.) (mem. op., not designated for publication); *Ex parte Castellano*, 321 S.W.3d 760, 763 (Tex. App.—Fort Worth 2010, no pet.) ("The State cannot announce ready for trial when there is no indictment.").

At the hearing on appellant's motion to reconsider, the State represented that it was ready for trial, it had the evidence and witnesses necessary to prove its case,

and it had been ready since the date of indictment, which had occurred nine days after appellant's arrest for the April 28, 2020 DWI felony offense. *See Ex parte Jackson*, Nos. 03-17-00301-CR, 03-17-00302-CR, 2018 WL 1598919, at *4 (Tex. App.—Austin Apr. 3, 2018, no pet.) (mem. op., not designated for publication) ("The State met its initial burden of a prima facie showing of readiness by demonstrating the existence of indictments in these cases and by announcing that it was ready for trial during the allotted 90-day period."); *Ex parte Ragston*, 422 S.W.3d at 907. Appellant's counsel at the hearing also agreed that the State had met its prima facie showing that it was ready for trial and stated that "[i]t [was] now [appellant's] burden to rebut the State's announcement of ready." The record supports the trial court's conclusion that the State met its initial burden of a prima facie showing of readiness through the existence of an indictment and communicating, through the State's comments at the hearing, that it was ready for trial within ninety days of appellant's detention.

As to whether appellant rebutted the State's prima facie showing, appellant argued in his motion to reconsider that the State could not establish that it was ready for trial because it had not given appellant "a single video[taped recording]" related to the April 28, 2020 DWI felony offense and it had not provided appellant "with a toxicology report or blood discovery related to the blood evidence seized during [appellant's] arrest" on April 28, 2020. Appellant attached to his motion to

reconsider an affidavit from his trial counsel, in which counsel stated that on April 28, 2020 appellant was arrested for a "felony DWI" offense; as of July 27, 2020, appellant had been detained for ninety days; the State had not provided appellant with "a single video[taped recording] related" to the April 28, 2020 DWI felony offense; HPD officers' reports stated that certain officers "were . . . wearing body cameras during [appellant's] arrest" and that "three vials of [appellant's] blood were obtained during [his] arrest and turned into the HPD [p]roperty [r]oom for storage awaiting [a] request to be analyzed for the presence of alcohol and/or drugs"; and the State had not given appellant "any toxicology report from the blood evidence seized during [the] arrest" on April 28, 2020. At the hearing, appellant's counsel argued that the State could not be ready for trial "without the blood results and potentially without any video[taped recordings]." Appellant did not admit any evidence at the hearing.

In response, the State asserted at the hearing that it could prove its case against appellant—that appellant drove a motor vehicle while intoxicated on a public roadway—"by witness testimony alone" and it "ha[d] that." The State also did not "have the evidence" that appellant was seeking, and if it did, it "would turn it over."

"Evidence that rebuts a prima facie showing of readiness may consist of, among other things, a demonstration that the [S]tate did not have a key witness or piece of evidence available by the last day of the applicable time limit so that the

[S]tate was not ready for trial within that time limit." *Jones*, 803 S.W.2d at 718 (internal quotations omitted). But, as noted above, there is no bright line rule on just how much or what type of evidence the State must have available for trial to be prepared for trial. *See Behrend*, 729 S.W.2d at 720; *Ex parte Brosky*, 863 S.W.2d at 779.

A person commits the offense of DWI if "the person is intoxicated while operating a motor vehicle in a public place." TEX. PENAL CODE ANN. § 49.04(a). "Intoxicated" is defined as either (1) "not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body" (the "impairment theory") or (2) "having an alcohol concentration of 0.08 or more" (the "per se theory"). *Id.* § 49.01(2) (internal quotations omitted); *see also Bradford v. State*, 230 S.W.3d 719, 721–22 (Tex. App.—Houston [14th Dist.] 2007, no pet.). Thus, there are two theories of intoxication, per se and impairment, that the State can use to prove its case, and the State may prove intoxication by either theory. *See Bradford*, 230 S.W.3d at 721–22; *see also Bagheri v. State*, 119 S.W.3d 755, 762 (Tex. Crim. App. 2003). Still yet, intoxication under the impairment theory may be established through a lay witness's testimony. *See Annis v. State*, 578 S.W.2d 406, 407 (Tex. Crim. App. [Panel Op.] 1979) (holding law enforcement officer's testimony about his

observations of defendant's driving, physical appearance, post-driving behavior, and his conclusion of intoxication sufficient); *Zill v. State*, 355 S.W.3d 778, 785–86 (Tex. App.—Houston [1st Dist.] 2011, no pet.); *Harkins v. State*, 268 S.W.3d 740, 748–51 (Tex. App.—Fort Worth 2008, pet. ref'd) (holding evidence of intoxication sufficient where law enforcement officer testified defendant had heavy eyes, constricted pupils, disorientation, and slurred speech); *State v. Mechler*, 123 S.W.3d 449, 455 (Tex. App.—Houston [14th Dist.] 2003) (State generally relies on eyewitness testimony to prove intoxication under impairment theory), *aff'd*, 153 S.W.3d 435 (Tex. Crim. App. 2005). A toxicology report or a videotaped recording of the alleged DWI offense is not required.

The State met its initial burden of a prima facie showing of readiness. Although appellant tried to rebut this presumption, appellant failed to show that the State did not have the evidence that it needed to proceed—that the purportedly missing "video[taped recordings]" and "toxicology report from the blood evidence seized during" appellant's arrest were so vital to the State's case that it was not ready for trial without them. *Cf. Ex parte Jackson*, 2018 WL 1598919, at *2–5 (noting "[i]t is not unusual for litigants to have to go to trial without every witness or every piece of evidence that they would like to present"). Absent a sufficient rebuttal, the trial court had the discretion to find that the State was timely ready for trial. *See Jones*, 803 S.W.2d at 719; *Ex parte Brosky*, 863 S.W.2d at 778.

After reviewing the record—applying the appropriately deferential standard of review and viewing the facts in the light most favorable to the trial court's ruling—we cannot conclude that the trial court erred in determining that the State was ready for trial within ninety days of appellant's detention for the April 28, 2020 DWI felony offense.  Thus, we hold that the trial court did not err in denying appellant habeas relief related to the April 28, 2020 DWI felony offense.

We overrule appellant's second issue.

## Conclusion

We affirm the orders of the trial court.


Julie Countiss
Justice

Panel consists of Justices Hightower, Countiss, and Farris.

Do not publish.  TEX. R. APP. P. 47.2(b).